868 F.2d 604
 57 USLW 2535
 Glen FULLER, Appellee,
v.
Warren DIESSLIN, Superintendent of Buena Vista Correctional
Facility, Buena Vista, Colorado and W. Cary
Edwards, Attorney General for State of
New Jersey, Appellants.
 No. 88-5456.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 31, 1988.
Decided Feb. 24, 1989.
Rehearing and Rehearing In Banc Denied March 24, 1989.
 
 Alan Sibler (argued), Mark B. Gombiner, Hayden, Perle and Silber, New York City, for appellee.
 Debra L. Stone, Deputy Atty. Gen. (argued), Div. of Criminal Justice, Appellate Section, and W. Cary Edwards, Atty. Gen. of New Jersey, Trenton, N.J., for appellants.
 Before GIBBONS, BECKER and WEIS, Circuit Judges.
 OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 This is an appeal from an order of the district court granting a writ of habeas corpus to a state prisoner on the ground that he was arbitrarily denied the right to counsel of his choice by a New Jersey state court before which he appeared on drug and weapons charges. Petitioner, Glen Fuller, had New Jersey counsel, who moved for admission pro hac vice of two out-of-state lawyers who were prepared to try Fuller's case. Without a hearing or making particularized findings, the state trial court denied Fuller's request, reasoning that local counsel was competent and that unacceptable trial delay was likely with two out-of-state counsel. Upon pleading guilty, Fuller reserved the right to raise the counsel of choice issue on appeal. Appellate relief in the state court was denied, thereby exhausting state remedies and setting the stage for the habeas petition.
 
 
 2
 New Jersey appeals the district court's decision granting the writ. The appeal raises the question whether a trial court, which presumes that the proceedings will be unacceptably delayed where the defendant is represented by out-of-state counsel, and denies counsel of choice on that basis alone (assuming the existence of competent local counsel), has arbitrarily denied the right to counsel of choice and therefore violated defendant's sixth amendment right to counsel. Although New Jersey argues strongly, see infra Typescript at 9-12, that our precedents in United States v. Romano, 849 F.2d 812 (3d Cir.1988) and United States v. Rankin, 779 F.2d 956 (3d Cir.1986), should be reevaluated in light of the Supreme Court's recent decision in Wheat v. United States, --- U.S. ----, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), we do not believe that that case may be read as overruling these cases, which control the question, and hence we will affirm.[1]
 
 I. FACTS AND PROCEDURAL HISTORY
 
 3
 On November 14, 1980, Glen Fuller was a passenger in a car driven by Douglas Chappee, which was stopped for speeding in New Jersey. A search of the car turned up a large quantity of cocaine and about a pound of marijuana. Fuller and Chappee were subsequently indicted by a grand jury on three counts of possession of a controlled dangerous substance and one count each of possession of a controlled dangerous substance with intent to distribute and unlawful possession of a weapon. On motion to the New Jersey Superior Court (the trial court), Fuller requested, through local counsel, that he be represented pro hac vice by a lawyer from Illinois and another from the District of Columbia. The trial judge based his denial of Fuller's motion on his belief that local counsel was competent, that the case was going to be hotly contested, and that two out-of-state counsel would severely inconvenience the proceedings, stating that "the nature of the probable delay ... [that] will occur as a result of this matter ... is so grave as to overcome the 'unfettered' right of defendant to counsel of his own choosing, and accordingly, the motion to admit pro hac is denied."[2] Trial Court Trans. of July 9, 1981, at 19-20.
 
 
 4
 Fuller subsequently requested leave to appeal the trial court's denial of his motion for counsel pro hac vice to the Appellate Division of the Superior Court, and to the Supreme Court of New Jersey, but leave was denied in both instances. Fuller then sought relief in the district court for the District of New Jersey, requesting a temporary restraining order, a preliminary injunction, and a permanent injunction. At that time the court denied relief and abstained in the face of the ongoing state criminal proceedings. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). An immediate appeal to this Court was withdrawn, and the trial court proceedings resumed.
 
 
 5
 In August 1982, a suppression hearing was held before the state trial court. Two years later, on April 10, 1984, Fuller and codefendant Chappee entered conditional retraxit guilty pleas to possession of cocaine with intent to distribute, in exchange for dismissal of the remaining counts and the state's agreement to make no recommendation as to sentence other than that incarceration was necessary. Fuller reserved the right to raise certain legal issues, including the counsel of choice issue, for purposes of appeal. He was sentenced to a term of 20 years in jail and a fine of $20,000.
 
 
 6
 Fuller appealed to the Appellate Division, which affirmed Fuller's conviction, holding inter alia that the trial court had not abused its discretion in denying Fuller's motion for admission of counsel pro hac vice and further stating that Fuller had "received extremely competent representation both in the trial court and here." State v. Chappee, 211 N.J.Super. 321, 335, 511 A.2d 1197, 1205 (App.Div.1986). The New Jersey Supreme Court denied certification. State v. Fuller, 107 N.J. 45, 526 A.2d 136 (1986).
 
 
 7
 On June 16, 1987, Fuller filed his habeas petition. See 28 U.S.C. Sec. 2254 (1982). On May 10, 1988, the district court filed an amended opinion and order, granting the writ. The court ruled that: (1) the denial of Fuller's request for counsel pro hac vice deprived Fuller of his right to counsel of choice because the existence of local capable counsel "is not a sufficient reason to overcome [the defendant's] right to counsel of choice"; and (2) that the trial court had erred in making a "rote application" of a "blanket generalization" rather than an individual determination of potential delay based on the facts of this case. Dist.Ct.Op. at 14-15. The court went on to note that the trial court's distinction between in-state and out-of-state attorneys was a "geographical" distinction that made little sense in light of the "reality of a highly mobile bar that has at its disposal modern transportation and communication." Id. at 16. The court held that deprivation of the right to counsel of choice is per se reversible and does not require a showing of prejudice, citing United States v. Laura, 607 F.2d 52, 58 (3d Cir.1979), and United States v. Rankin, 779 F.2d 956, 960 (3d Cir.1986).
 
 
 8
 Our review of this legal determination of the district court is plenary. See United States v. Adams, 759 F.2d 1099, 1106 (3d Cir.1985); Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102 (3d Cir.1981).
 
 II. DISCUSSION
 
 9
 A. Does the Right to Counsel of Choice Include a Right to Counsel Pro Hac Vice?
 
 
 10
 New Jersey challenges the district court's issuance of the writ on the ground that if there is a right to choose out-ofstate counsel, that right is not absolute and, at all events, was not improperly denied in this case. At the threshold, we must determine whether the right to counsel of choice encompasses the right to counsel pro hac vice. Neither this Court nor the Supreme Court has explicitly determined whether the right to counsel pro hac vice is included within the right to counsel of choice. The Supreme Court has considered whether an out-of-state attorney has a fourteenth amendment due process right to practice in a state in which he is not a member of the bar and held that there is no such right. See Leis v. Flynt, 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979). The Court, however, made it clear that it had not addressed the issue of whether a litigant's right to counsel of choice includes the right to out-of-state counsel. Leis, 439 U.S. at 442 n. 4, 99 S.Ct. at 701 n. 4.
 
 
 11
 New Jersey advances no argument why, and we see no reason why, a request for counsel pro hac vice should be treated any differently by a trial court than any other request for counsel of choice.[3] We do have, as the district court noted, "a highly mobile bar that has at its disposal modern transportation and communication." Dist.Ct.Op. at 16. Therefore, the number of occasions on which a defendant will desire to be represented by counsel pro hac vice is frequent and will be increasingly so. Arbitrarily to deny a defendant the right to obtain counsel from outside the state would untowardly limit the possible choices the defendant might have. Thus, we conclude that the right to counsel pro hac vice is encompassed analytically within the right to counsel of choice, and as such should be examined within the analytic framework generally employed in right to counsel of choice cases.
 
 
 12
 B. Does Arbitrary Denial of Counsel of Choice Require Per Se Reversal?
 
 
 13
 The sixth amendment guarantees a criminal defendant the right "to have the Assistance of Counsel for his defense." U.S. Const., amend. VI. It is well-settled that a component of this right is the protection of a defendant's opportunity to obtain counsel of choice. Powell v. Alabama, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932); Romano, 849 F.2d at 818; Rankin, 779 F.2d at 958; Laura, 607 F.2d at 55-56. The sixth amendment does not, however, "ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat, 108 S.Ct. at 1697; see also Romano, 849 F.2d at 819 ("The right to choose counsel is not unqualified...."); Rankin, 779 F.2d at 958 ("Although the right to representation by chosen counsel is subject to limitations it may not be hindered unnecessarily."); Laura, 607 F.2d at 57 (no absolute right to counsel of choice). Thus, while a defendant's choice may not be arbitrarily denied, a defendant's right to choose his own counsel must be balanced against the fair and proper administration of justice. Rankin, 779 F.2d at 958; Laura, 607 F.2d at 57; see also Linton v. Perini, 656 F.2d 207, 209 (6th Cir.1981) ("a trial court, acting in the name of calendar control, cannot arbitrarily and unreasonably interfere with a client's right" to counsel of choice).
 
 
 14
 Our recent decision in United States v. Romano, 849 F.2d 812 (3d Cir.1988), controls the outcome of this case. In Romano, following the district court's revocation of defendant's pro se status, the defendant requested counsel of her choice. The court summarily denied defendant's request, instead appointing counsel for her. Romano, 849 F.2d at 818. On appeal, this Court held that the district court's failure to conduct a hearing and failure to make "specific findings of fact consistent with the evidence" as to the suitability of defendant's chosen counsel violated the defendant's sixth amendment rights and required reversal. Id. at 820. The holding of Romano, therefore, is that a trial court's arbitrary denial of defendant's request for her counsel of choice requires per se reversal. See also Rankin, 779 F.2d at 960 (arbitrary denial of defendant's request for counsel of choice requires reversal without showing of prejudice); Laura, 607 F.2d at 57-58 (same); United States v. Panzardi Alvarez, 816 F.2d 813, 817 (1st Cir.1987) (mechanistic application of local rule that permits district judge to arbitrarily deny defendant's request for counsel of choice requires reversal).
 
 
 15
 New Jersey has offered the following not insubstantial arguments for a conclusion that Romano should not control the outcome of this case, but rather the right to counsel of choice should be governed by the harmless error beyond a reasonable doubt standard. First, in the Supreme Court's most recent case involving waiver of conflict-free counsel, the Court implies that the right to counsel of choice is grounded in the right to effective assistance of counsel. In Wheat, 108 S.Ct. at 1697 (upholding district court's decision not to permit waiver of right to conflict-free counsel), the Court stated that "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Because the Court did not find error in the district court's order, it does not address in any fashion whether a prejudice, harmless error, Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), or per se analysis would have been appropriate had they found error. The Court, however, states that the "essential aim" of the Sixth Amendment is the effective assistance of counsel. While that does not answer the question of which standard applies it would not, as New Jersey pointed out at oral argument, make much sense to require per se reversibility in counsel of choice cases if the right to counsel of choice is intended to secure the right to effective assistance of counsel and the right to effective assistance of counsel requires a showing of prejudice for reversal. See Strickland v. Washington, 466 U.S. 668, 691-92, 104 S.Ct. 2052, 2066-67, 80 L.Ed.2d 674 (1984).
 
 
 16
 Second, New Jersey argues that the right to counsel of choice is, in any case, akin to the right to effective assistance of counsel and, therefore, a harmless error or prejudice analysis should be applied. Under existing jurisprudence, it is not clear whether the right to counsel of choice is more akin to the right to effective assistance of counsel or the right to self-representation. A denial of the right to self-representation is per se reversible. See Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). But a denial of the right to effective assistance of counsel is subject to a prejudice analysis. This Court in Rankin, 779 F.2d at 960, stated that the right to counsel of choice is a species of the right to self-representation. Arguably, therefore, per se analysis should apply. See also Laura, 607 F.2d at 58. But, as New Jersey points out, the Supreme Court in Wheat states that the right to counsel of choice is not a species of the right to self-representation and therefore implies that per se analysis would not necessarily apply. Wheat, 108 S.Ct. at 1697 n. 3 (a defendant's "right to represent himself if he voluntarily elects to do so, does not encompass the right to choose any advocate if the defendant wishes to be represented by counsel").
 
 
 17
 Were we writing on a clean slate, we would be presented with the difficult issue of determining whether the right to counsel of choice is governed by a harmless error, or prejudice, analysis or a per se reversal analysis. Prior to Strickland, in which the Supreme Court announced a prejudice test for ineffective assistance of counsel cases, courts could safely assume that all right to counsel cases were governed by the per se reversibility standard. See Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (holding that denial of right to counsel is governed by per se standard). In fact, in this Circuit, the seminal right to counsel of choice case simply assumed that a per se reversal analysis applied. See Laura, 607 F.2d at 58. The subsequent Third Circuit right to counsel of choice cases have relied heavily on Laura without addressing whether the intervening Strickland case altered the standard for reversal. See United States v. Romano, 849 F.2d 812 (3d Cir.1988); United States v. Rankin, 779 F.2d 956 (3d Cir.1986). It is by no means clear, however, whether Laura survives Strickland or the burgeoning constitutional harmless error cases. See generally T. Stacy & K. Dayton, Rethinking Harmless Constitutional Error, 88 Colum.L.Rev. 79 (1988) (detailing increasing trend toward harmless error analysis and providing analytical approach).[4]
 
 
 18
 Despite New Jersey's interesting arguments to the contrary, Wheat's dicta, however pregnant, cannot control the outcome. Rather, we are constrained by this Circuit's approach in Rankin and Romano. In this Circuit, absent further (and more concrete) Supreme Court developments or an in banc opinion, where there is an arbitrary denial of the right to counsel of choice, reversal is per se.
 
 
 19
 The district court in this case measured the trial court's treatment of Fuller's motion for counsel pro hac vice against the well-settled standards discussed supra, holding that the trial judge "fail[ed] to scrutinize the particular case at bar" and therefore violated Fuller's sixth amendment rights. As the following discussion of the trial court's inquiry will make clear, the district court's conclusion was correct.
 
 
 20
 C. Was the State Trial Court's Denial of Counsel Pro Hac Vice Arbitrary?
 
 
 21
 The state trial court determined that local counsel was capable of adequately representing Fuller. The court stated that it was " 'satisfied there's an adequate degree of expertise available in this state to handle any of these motions.' " Dist.Ct.Op. at 11 (quoting trial court trans. of July 9, 1981, at 32). The district court rejected the state courts' determination, reasoning that local counsel were not necessarily more knowledgeable about local law than out-of-state counsel and that the state rule's requirement that out-of-state counsel appear with local counsel would mitigate any delays potentially caused by an out-of-state counsel's lack of knowledge of the local law. We agree with the district court that, as a logical matter, it is not necessarily true that local counsel will be more knowledgeable about the New Jersey law than out-of-state counsel and therefore the competence of in-state counsel will not in itself reduce the likelihood of delay.
 
 
 22
 On appeal, however, New Jersey has characterized this issue not so much as a factual matter of whether in-state counsel would know more than out-of-state counsel, but rather, as a proposed legal standard: if there is adequate local counsel, then a denial of a request for out-of-state counsel cannot deny a defendant his sixth amendment rights. We conclude that this approach is without merit, because it collapses the right to counsel of choice into the right to effective assistance of counsel. A fair restatement of New Jersey's position is that if the local pool of available counsel would supply effective assistance, then the denial of the right to counsel of choice could not rise to a constitutional deprivation.[5] In New Jersey's favor, the Supreme Court has stated that "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat, 108 S.Ct. at 1697. Yet, even if the right to counsel of choice exists for the purpose of securing effective assistance of counsel to the defendant, as New Jersey suggests, see supra Typescript at 10, the two rights are not identical. We do not understand the language in Wheat to mean that the right to counsel of choice is important only insofar as it secures the right to effective assistance of counsel. Rather, it could be fairly interpreted to mean that, although the core value in the sixth amendment is effective assistance of counsel, the amendment also comprehends other related rights, such as the "right to select and be represented by one's preferred attorney." Id.
 
 
 23
 This Court has clearly stated the importance of a defendant's securing the counsel of his choice, and these considerations are significantly different from the goals sought from effective assistance of counsel:
 
 
 24
 [T]he most important decision a defendant makes in shaping his defense is his selection of an attorney. The selected attorney is the mechanism through which the defendant will learn of the options which are available to him. It is from his attorney that he will learn of the particulars of the indictment brought against him, of the infirmities of the government's case and of the range of alternative approaches to oppose or even cooperate with the government's efforts.
 
 
 25
 ....
 
 
 26
 Attorneys are not fungible, as are eggs, apples and oranges. Attorneys may differ as to their trial strategy, their oratory style, or the importance they give to particular legal issues. These differences, all within the range of effective and competent advocacy, may be important in the development of a defense. It is generally the defendant's right to make a choice from the available counsel in the development of his defense. Given this reality, a defendant's decision to select a particular attorney becomes critical to the type of defense he will make and thus falls within the ambit of the sixth amendment.
 
 
 27
 Laura, 607 F.2d at 56. Therefore, it should not be enough for the government to demonstrate availability of other competent counsel to defeat the defendant's request for particular counsel. Rather, the only concerns the court may consider in weighing whether to grant the defendant's request for counsel of choice are the defendant's right to counsel of choice and the fair and proper administration of justice.
 
 
 28
 The state trial court also expounded on the difficulties inherent in cases involving out-of-state attorneys and caused by the likely delays incumbent upon traveling and the trial court's inability to negotiate trial scheduling with out-of-state judges. See Dist.Ct.Op. at 12-13. The district court rejected the trial court's conclusion, stating that "[t]he rote application of this kind of blanket generalization 'leaves no room for the exercise of discretion.' Rather, it represents the court's failure to scrutinize the particular case at bar." Id. at 15 (quoting Panzardi Alvarez, 816 F.2d at 817). The district court further declared that the record demonstrated that local counsel was unprepared to proceed, but that out-of-state counsel was prepared and concluded that "the trial court's view was based, at best, upon speculative delays rather than upon a record which could support a finding that the particular out-of-state attorneys repeatedly impeded the progress of litigation." Dist.Ct.Op. at 15-16.
 
 
 29
 We hold that the district court correctly concluded that the trial court's wooden approach and its failure to make record-supported findings balancing the right to counsel with the demands of the administration of justice resulted in an arbitrary denial of Fuller's motion for counsel pro hac vice. We are satisfied that the district court correctly applied the law of this Circuit in concluding that such an arbitrary denial constituted a per se constitutional error justifying issuance of the writ.[6] See Romano, 849 F.2d at 820.[7]
 
 
 30
 We hasten to add that we do not hold that a court is prohibited from using its "instinct and judgment based on experience," Wheat, 108 S.Ct. at 1699, when it weighs the competing rights of the litigant to counsel of his choice and wise judicial administration. Rather, we merely hold that the court may not assume that out-of-state attorneys will not be capable of meeting the court's schedule. Upon obtaining sufficient information as to the availability of the requested counsel, the court must then employ its knowledge and experience to determine whether the litigant's choice of counsel will unduly frustrate the administration of the court. It is this kind of reasoned balancing that is necessary to avoid the arbitrariness problem.
 
 
 31
 Moreover, these holdings do not militate against the principle that a trial court has broad discretion in the administration of its trials. In Wheat, the Court stated that "the District Court must be allowed substantial latitude in refusing waivers of conflicts of interest.... In the circumstances of this case, with the motion for substitution of counsel made so close to the time of trial, the District Court relied on instinct and judgment based on experience in making its decision." 108 S.Ct. at 1699. And in Morris v. Slappy, 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983) (right to counsel of choice not violated where trial court refused continuance even though defendant's counsel of choice was in the hospital), the Court emphasized that "[t]rial judges necessarily require a great deal of latitude in scheduling trials." See also Rankin, 779 F.2d at 960; Sampley v. Attorney General of North Carolina, 786 F.2d 610, 613 (4th Cir.1986) (courts have broad latitude in deciding whether to grant continuance, even where decision results in denial of counsel of choice), cert. denied, 478 U.S. 1008, 106 S.Ct. 3305, 92 L.Ed.2d 719 (1986).
 
 
 32
 The Eighth Circuit has gone further and interpreted this broad grant of discretion to permit a trial court to deny the defendant's choice based on the trial court's presumption that in-state counsel would provide for a more "orderly processing of the case" than defendant's requested out-of-state counsel. Williams v. Nix, 751 F.2d 956, 959 (8th Cir.1985), cert. denied, 471 U.S. 1138, 105 S.Ct. 2681, 86 L.Ed.2d 699 (1985). We do not believe that a requirement that the trial court determine whether the defendant's chosen counsel is likely in fact to delay the trial improperly impinges on its generally broad discretion over scheduling and administration of its caseload and therefore decline to follow the more expansive Eighth Circuit position that would permit a trial court to presume delay if out-of-state counsel is entered.
 
 III. CONCLUSION
 
 33
 In sum, the state trial court's reasoning underlying its denial of Fuller's motion for counsel of choice was fundamentally flawed, because it was not based on the facts of this particular case or on considerations that are necessarily related to the determination whether to deny the defendant's right to counsel of choice. We hold that Fuller's request for counsel of choice was arbitrarily denied, that Fuller's sixth amendment right to counsel of choice was thereby violated, and therefore that the district court was correct in issuing the writ of habeas corpus. That order of the district court will therefore be affirmed.
 
 
 34
 WEIS, Circuit Judge, dissenting.
 
 
 35
 The majority concludes that the state trial judge arbitrarily denied the defendant's request for representation by counsel of his choice. I disagree with that assessment of the state court's ruling, and would reverse the district court's grant of habeas corpus. Because I find the trial judge acted within the scope of his discretion, I would delay until another day the constitutional question prematurely resolved by the majority in this case.
 
 
 36
 Defendant Glen Fuller was asleep in the rear seat of a car driven by his codefendant, Douglas Chappee, when they were pulled over by New Jersey state troopers for speeding at 4:30 a.m. on November 14, 1980. The troopers smelled marijuana smoke and noticed a burnt marijuana cigarette on the floor of the automobile. They requested and received permission to examine the trunk where they discovered more than five pounds of cocaine and lesser quantities of other drugs. Both Fuller and Chappee were indicted, and their cases were consolidated for pretrial motions and trial.
 
 
 37
 On July 2, 1981, local counsel for codefendant Chappee moved the admission pro hac vice of John Van Ness, an attorney from Aspen, Colorado. The judge to whom the case had been assigned for trial denied the motion, observing that it was "difficult enough to run a trial calendar and a motion calender with counsel throughout the State, to get them here together on time, obviously if we involved out-of-state counsel from Colorado, who is on his feet today in Colorado and perhaps tomorrow in California, and the day after that in Florida, the opportunity to consult, meet with, and to schedule becomes extremely difficult."
 
 
 38
 The trial judge commented further that the case did not appear to involve unusual difficulty requiring out-of-state counsel, but instead presented issues with which local lawyers were quite familiar. He determined that the Colorado attorney's proposed admission pro hac vice would "unnecessarily burden and unduly delay the disposition of motions, arguments and trial[ ] of the case." Responding to a question from local counsel, the judge elaborated on the difficulties of airline scheduling, noting that no special expertise is required "to understand it's harder to get a hold of a guy from Colorado, than it is from New Jersey."
 
 
 39
 A week later the judge denied a similar motion to admit Keith Stroup of Washington, D.C. and Michael Pritzker of Illinois on behalf of defendant Fuller. The court explained,
 
 
 40
 "one [lawyer] from Aspen, Colorado, one from either D.C. or Illinois, or wherever, plus local counsel, plus out-of-state defendants. There are too many unknowns in that equation. It's going to be difficult just with the out-of-state clients and in-state attorneys to run anything like a reasonable motion and Appellate schedule, which occur in this case, without adding two lawyers from two different states, who have multiciplicity of obligations and to run it all at the same time."
 
 
 41
 The judge's concern with the defendants' availability arose from the fact that both were nonresidents--Fuller lived in Colorado, Chappee in Massachusetts--and both were enlarged on bail.
 
 
 42
 The court recognized that the state's policy did not discourage pro hac vice admissions, but that it first required a balancing of the pertinent circumstances. The judge recounted the imminent air controllers' strike and noted the heavy scheduling obligations imposed by the speedy trial rules. He pointed out that even if all the motions pending in the case were immediately resolved, the earliest trial date would fall in November or December, four or five months away. More realistically, if disposition of the motions was delayed until August and if out-of-state counsel were to be admitted, "we're talking earliest disposition ... next spring, when the case is a year old and probably longer."
 
 
 43
 This factual background, considered in light of the judge's actual comments, is essential to a proper resolution of the legal issue presented here. The constitutional dimension of the right to retain counsel of one's choice, though consistently recognized, has been coupled with the qualification that it is not absolute. United States v. Flanagan, 679 F.2d 1072, 1075 (3d Cir.1982), rev'd on other grounds, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984); Davis v. Stamler, 650 F.2d 477, 479 (3d Cir.1981). We have acknowledged that, as desirable as it may be for a criminal defendant to select an attorney of his own choosing, "that goal must be weighed and balanced against an equally desirable public need for the efficient and effective administration of criminal justice." United States ex rel. Carey v. Rundle, 409 F.2d 1210, 1214 (3d Cir.1969), cert. denied, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970).
 
 
 44
 The complexities of calendar control in metropolitan courts, the necessary balancing of the accuseds' rights to a speedy trial, the prosecutors' need for stability in scheduling, and the availability of witnesses are all factors in the calculus. Unrestrained liberality can upset the delicate balance; accommodating one defendant in scheduling might prejudice the rights of another whose trial would be accelerated or delayed. Thus, the "inescapable" conclusion, we have determined, is that "although the right to counsel is absolute, there is no absolute right to a particular counsel." Id. at 1215. See Wheat v. United States, --- U.S. ----, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988).
 
 
 45
 A proper concern for the difficulties of calendar control was critical to our decision in United States v. Rankin, 779 F.2d 956 (3d Cir.1986). There, we decided that the district court infringed on the defendant's right to counsel of choice by refusing to continue a trial despite the fact that the defendant's lawyer was still engaged in state court. The pivotal element in that case was the inconsistency we perceived between the district court's action and a compact that had been reached by the local federal and state courts designed to ease inter-forum calendar conflicts.
 
 
 46
 In those circumstances, the public's interest in efficient administration of the criminal justice system coincided with the defendant's request for a continuance. Consequently, the defendant's choice of counsel--which otherwise might have been subordinated to the need to proceed expeditiously to trial--was given deference. The ruling in Rankin did not compromise our previous holdings that the right to counsel of choice is not absolute.
 
 
 47
 The Supreme Court has emphasized that trial judges must be given wide latitude in scheduling trials. "Not the least of [the judge's] problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." Morris v. Slappy, 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983). This consideration is particularly pertinent in today's bustling metropolitan court systems where calendering is a frustrating, complicated process that constantly threatens the prompt, orderly disposition of criminal cases.
 
 
 48
 My review of the record here does not bear out the district court's conclusion that the state trial judge proceeded from a per se theory that out-of-state attorneys hinder the efficient processing of a case. To the contrary, the trial judge's comments revealed that his concern was not with out-of-state counsel as such, but with this particular congery of attorneys, commuting from such distant areas as Colorado and Illinois. The trial judge's conclusion that out-of-state counsel's availability--together with that of the Colorado and Massachusetts defendants--threatened to produce logistical problems was neither arbitrary nor unpredictable.
 
 
 49
 The district court's reliance on the speed of modern transportation to overcome geographical considerations is undermined by the realities of the jet age: flight cancellations, lost litigation boxes, weather delays, and, as the trial judge noted at the time, the imminence of an air controller's strike. Although air travel is quick when conditions are right, experienced travelers know that expectations of flight availability and on-time arrivals are often more fanciful than real. Moreover, the district court did not evaluate the added complexities in this litigation brought on by the consolidation of the Fuller and Chappee cases. Thus, not only were the pro hac vice applications of attorneys Stroup and Pritzker at issue, but that of Mr. Van Ness as well.
 
 
 50
 As one reason for granting habeas corpus relief, the district court construed the state judge's ruling as applying a per se presumption that New Jersey lawyers were more knowledgeable about state and local rules than the counsel defendants selected. I find nothing in the trial judge's discussion that expresses such a view. In fact, the judge generously acknowledged the competence of out-of-state counsel, at times even intimating that the special talents of chosen counsel exceeded those necessary for the issues presented.
 
 
 51
 A fair reading of the state court transcript persuades me that the district court mischaracterized the trial judge's ruling as resting on per se factors. To the contrary, I find that the state judge sufficiently explained the specific circumstances that counseled against admitting the three attorneys pro hac vice.
 
 
 52
 Judges in busy criminal courts encounter daunting impediments to the prompt disposition of the many cases awaiting trial. The difficulties to beginning a trial on its scheduled day are many and diverse, and it is hardly surprising that an overwhelmed court can rarely accord parties a date certain. Reducing the number of factors that complicate scheduling while nevertheless honoring the rights of the affected parties is no easy task. Inevitably, some accommodation must at times be reached, and harried trial judges must be given wide discretion in this frustrating endeavor.
 
 
 53
 The state trial judge here did not abuse his discretion in denying defendant representation by out-of-state counsel. I would reverse the judgment of the district court and vacate the grant of the writ of habeas corpus.
 
 
 
 [1]
 We note that Romano was decided shortly after the decision in Wheat was announced, but that Wheat was not expressly addressed in Romano. We presume, however, that the panel in Romano considered Wheat, but rejected the possibility that it overruled the Rankin line of cases followed in Romano
 
 
 [2]
 At the time of the trial judge's determination, the state rule controlling admission of pro hac vice counsel stated that such counsel could be admitted "at the discretion of the court." N.J. Ct. R. 1:21-2 (1981). The rule has been subsequently amended; the district court inadvertently referred to the amended version. Dist.Ct.Op. at 9
 
 
 [3]
 Because Fuller does not challenge the state's pro hac vice rule itself, but only the trial court's weighing of his right to counsel of choice against the requirements of fair and proper judicial administration, we are not faced with the issue of whether the rule itself is unconstitutional
 New Jersey argues that there is no sixth amendment right to pro hac vice counsel, asserting that the state has an "important interest in maintaining control over those persons practicing law within their borders" and that if the right to counsel pro hac vice is constitutionalized, then the "state courts [would be] ... required to admit them." Appellant's Br. at 15. New Jersey's conclusion overstates the issue. The right to counsel of choice has been traditionally "balanced against the requirements of the fair and proper administration of justice." Rankin, 779 F.2d at 958. Therefore, the mere fact that a defendant's sixth amendment right to counsel of choice encompasses the right to request counsel pro hac vice does not necessarily require the courts to approve the request in every instance. Rather, it creates a presumption that the defendant's request should be granted unless considerations of judicial administration supervene.
 
 
 [4]
 It is also unclear exactly what the law in this Circuit is with respect to the standard in right to counsel of choice cases that do not involve arbitrary denials. Although the issue has been addressed in dicta, no Third Circuit case has yet expressed a holding as to whether a nonarbitrary, but erroneous denial of the right to counsel of choice is subject to either a harmless error analysis or falls under a rule of per se reversibility. For instance, a trial court could make a reasoned determination on the basis of a fully prepared record (hence a nonarbitrary determination), but still err in concluding that counsel of choice should be denied. Arguably, the discussion in United States v. Flanagan, 679 F.2d 1072, 1075 (3d Cir.1982), vacated on other grounds, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), implies that absent arbitrary action, there can be no reversal, basing its conclusion on Davis v. Stamler, 650 F.2d 477 (3d Cir.1981), but the court in Davis not only applied an arbitrariness standard, but also a reasonableness standard to the trial judge's activities. We therefore conclude that no case in this Circuit has yet expressed a holding as to the standard to be applied in nonarbitrary, erroneous denials of the right to counsel
 
 
 [5]
 One Circuit has held that an indigent defendant has no right to have out-of-state counsel appointed for him, because of the state's "legitimate interest in developing a pool of competent attorneys to represent indigents...." Bedrosian v. Mintz, 518 F.2d 396, 401 (2d Cir.1975). That case does not speak, however, to a case such as the one before us wherein there is no claim of a countervailing state interest for preferring in-state counsel over out-of-state counsel. It therefore provides no guidance for our decision in this case
 
 
 [6]
 New Jersey argues that we must reverse the district court, because 28 U.S.C. Sec. 2254(d) (1982) requires us to give great deference to a state court's factfindings. However, the trial court in this case made no findings of fact with respect to the issue of counsel of choice. Rather, its conclusions were drawn from its presuppositions about the impact of out-of-state counsel on trial court scheduling. Where the district court has made no findings of "historical fact," we need not presume its statements are correct, see Holland v. Attorney General of New Jersey, 777 F.2d 150, 155 (3d Cir.1985), and therefore Sec. 2254(d) provides no impediment to our affirmance of the district court's issuance of the writ
 
 
 [7]
 The state trial court also perceived that the case was going to be "fought tooth and nail," would involve a number of interlocutory appeals, and therefore that scheduling would be even more difficult. Trial court trans. of July 9, 1981, at 34-35. While the district court did not address this issue in terms, we find this justification for the denial of the motion for counsel of choice most disturbing. We agree with the state trial court that it is undeniable that a hotly contested case is likely to intensify scheduling demands upon the court, but the defendant's interest in counsel of choice in such a situation is most acute and should not be denied absent record evidence that the chosen counsel would in fact delay the scheduling of the proceedings. It would make no sense to condition the grant of a request for counsel of choice on the degree of intensity with which the defendant pursues his case or whether the government and the defendant happen to be amicable or at loggerheads. Moreover, the arbitrariness of the trial court's conclusion is heightened by the fact that Fuller did not engage in a great number of interlocutory appeals, but rather pled guilty. This point, therefore, buttresses our holding that the district court properly issued the writ