McCKEE, Circuit Judge,
Dissenting.
Although I am compelled to dissent, I note at the outset that there is much to commend the majority’s Sixth Amendment analysis. Indeed, if we had the luxury of writing on the proverbial “blank slate,” I would have no hesitation joining it. For reasons that are not at all apparent on this record, Tinsley’s retained counsel told the prosecutor that 4 or 5 years earlier, he (counsel) had seen a gun similar to the one in question here, in the home of Tinsley’s girlfriend. That disclosure created the possibility that counsel would be called to testify against his own client if Tinsley employed a trial strategy of arguing that police planted the gun on him during his arrest. The District Court was understandably concerned that the government *437 might call defense counsel as a witness against his own client in the middle of a jury trial. Accordingly, the court granted the government’s motion to remove counsel, and Tinsley proceeded with an attorney who was not compromised by a potential conflict.
Nevertheless, because this record does not meet the requirements set forth in United States v. Voigt, 89 F.3d 1050 (3d Cir.1996), and because I am also troubled by the majority’s resolution of Tinsley’s hearsay claim, I must respectfully dissent.
I. Tinsley’s Sixth Amendment Claim.
The right to counsel guaranteed by the Sixth Amendment includes the right to counsel of choice. Powell v. Alabama, 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932). However, the right to counsel of choice must give way when it is outweighed by considerations of judicial administration. Voigt, 89 F.3d at 1074. In Voigt we explained that cases involving the Sixth Amendment right to counsel of choice “can ... be divided into two categories.” Id. The first category involves “ ‘arbitrar/ denials of the right to counsel.” Id. (citing Fuller v. Diesslin, 868 F.2d 604, 607 (3d Cir.1989)). The second category “concerns ‘a non arbitrary, but erroneous denial’ ” of the right to counsel. Voigt, 89 F.3d at 1074 (citing Fuller, 868 F.2d at 609 n. 4).
The arbitrariness comprising the first category of cases does not suggest “arbitrary” in the usual sense of an impulsive or whimsical act. Rather, a denial of the right to counsel is “arbitrar/’ when it results from “a failure to balance proper considerations of judicial administration against the right to counsel.” Voigt, 89 F.3d at 1074. In Voigt, we also explained that, although the decision to remove counsel of choice need not be based upon a hearing or supported by factual findings formally stated on the record, it must nevertheless be supported by a “reasoned determination on the basis of a fully prepared record.” Id. (quoting Fuller, 868 F.2d at 609 n. 4.). In fact, in Voigt, we upheld the court’s removal of defense counsel even though the court did not conduct an evidentiary hearing. However, there, “the court had before it submissions of the various parties, including sworn affidavits and documentary evidence attached as exhibits.” 89 F.3d at 1076. We concluded that “record was fairly substantial.” Id.
Voigt and several co-defendants were indicted for conspiracy to commit wire fraud and related offenses. The government alleged that certain trusts had been created as part of a scheme to defraud investors, launder funds, and evade taxes. Binns, one of Voigt’s defense attorneys, had previously represented the trusts and a codefendant in some capacity, and one of Voigt’s codefendants filed a motion to disqualify him from defending Voigt at trial. The motion was supported with an eleven page letter with attached exhibits including correspondence between Binns and the United States Attorney regarding Binns’ representation, a memorandum and notes by the codefendant regarding litigation strategies that mentioned Binns, and communications with investors in the trust directing them to contact Binns or deposit funds into an escrow account. Id. Binns responded with “ninety-six pages of documentary support” in opposition to the motion. His reply included affidavits, grand jury transcripts, correspondence, and FBI reports. Id.
Based upon that voluminous record and the uncontested evidence before the District Court, we held that the District Court’s removal of Binns was not arbitrary even though the court did not conduct a hearing before granting the motion. In *438 explaining its reasons for removing Binns, the District Court stated:
We have here a number of very serious issues. As a matter of fact, I would characterize it really as a foaming caldron of representation issues here. Such that I am convinced that it would be foolhardy for me to go forward and inject potential error and possible violation of the rights of codefendants in what purports to be a lengthy and complicated criminal case right at its inception before we have even heard any motions.
Mr. Binns has had substantial involvement in pre-indictment events concerning the case... .We have a letter that he represented [a codefendant] for a limited purpose. We have [the codefendant], according to counsel’s submission, saying that he thought Mr. Binns was going to represent him and later saying that he didn’t....
And I am convinced, based upon the precedent, that it would be very foolish for me to proceed and to allow [Binns to represent Voigt].... [T]o allow him to come into court and cross-examine other persons based upon his personal knowledge, possibly to examine persons ... he has represented beforehand, whether directly or otherwise, is exactly the concern that the cases have raised.
Id. at 1073. After considering this thorough explanation based upon the court’s review of the evidence there, we held that “the record was more than sufficient to enable the District Court to make a reasoned and well informed decision. Formal findings of fact [were] not required.” Id. at 1076. The situation here is quite different.
My colleagues state that the “District Court [here] was presented with a factually-detailed motion from the government ...”. Maj. Opn. at 434. That factually detailed motion consisted solely of the prosecutor informing the District Court that defense counsel had informed the prosecutor and an ATF agent that defense counsel had seen a similar weapon in the defendant’s girlfriend’s possession 4 or 5 years earlier. App. at 777-78. That is hardly a “factually detailed motion.” I realize, of course, that defense counsel did not dispute that representation, but that does not mean that the motion was “factually detailed” or that the record was fully developed. For example, there was no exploration of whether the girlfriend was available to testify about the gun, and the court never inquired into whether the government and defendant would stipulate to the fact that the girlfriend possessed a similar weapon in the event that testimony became necessary. Rather, the District Court’s entire explanation of the Sixth Amendment ruling is as follows:
I’m inclined to agree with the government on this motion because while it does not quote directly to an element of the offense against this defendant, it is relevant and can be relevant for purposes of proving the case by the government. So that I will grant the government’s motion in this matter, and remove counsel as counsel for the defendant.
App. at 786.
Thus, the District Court removed defense counsel because he had “relevant” testimony. Absent any inquiry into alternative ways of producing the same evidence in the event it became relevant, the record simply does not support removing defense counsel.[4]
*439 It is, of course, possible that even if a stipulation had been reached, or the girlfriend was available, the District Court could still have concluded that the balance tipped in favor of removing defense counsel. However, in that event, the record would at least have been more complete and we could then have reviewed the court’s balancing for an abuse of discretion. Since this record does not reflect any balancing, there was a per se violation of Tinsley’s Sixth Amendment right to counsel. As we explained in Voigt, “to be nonarbitrary, ... the District Court actually must make findings based on evidence in the record and weigh these findings against the right to counsel.” 89 F.3d at 1077. Given this absence of balancing, we must reverse because the resulting arbitrary denial of counsel is not amenable to a harmless error analysis. See Voigt, 89 F.3d at 1077 (stating that the Sixth Amendment right to choice of counsel is “the one area [where] our ... jurisprudence indicates” that a harmless error inquiry “is singularly inappropriate.”).
Moreover, I do not think our inquiry here is advanced by the analogy the majority seeks to draw to the balancing that is required under Fed.R.Evid. 403. My colleagues note that “we have not hesitated to find satisfied the requisite balancing of probative value and potential prejudicial impact under Fed.R.Evid. 403, even where the District Court does not explicitly go though a balancing inquiry.” Maj. Opn. at 435 n. 2 (citing Ansell v. Green Acres Contracting Company, 347 F.3d 515 (3d Cir.2003)). Here, we are concerned with the denial of a fundamental right, not the interplay of two conflicting rules of evidence, and our Rule 403 jurisprudence is therefore of little assistance.
The majority also rests its Sixth Amendment analysis on United States v. Merlino, 349 F.3d 144 (3d Cir.2003), and Tinsley cites to it as well as to Voigt. However, Merlino is a very different case. Merlino did not involve an “arbitrary” removal of counsel at all. Rather, in Merlino, “[t]he question [was] whether the District Court’s ultimate conclusion to disqualify [defense counsel] constituted an abuse of discretion.” 349 F.3d at 150. The case is therefore not as helpful as the majority suggests because the absence of the required balancing here raises the issue of an arbitrary denial the right to counsel, not an abuse of discretion. In Merlino, we explicitly noted that the court “engaged in the balancing required by the Sixth Amendment ... ”. Id. It is quite a stretch to find any such balancing on this record.
In addition, defense counsel’s conduct in Merlino was nothing short of outrageous, and the case is therefore less analogous to the circumstances here than the majority’s analysis suggests. In Merlino, defense counsel visited a prison where he spoke with an inmate who was to testify against a leader of an organized crime faction. The discussion the attorney had with that witness was tantamount to an obstruction of justice. The discussion could also have been interpreted as either a subtle threat, or an attempt to lull the witness into lowering his guard so that he might more easily become a target for mob ordered *440 violence. The government also argued that the defense attorney had “smuggled” a five page letter from the mob boss who was about to stand trial to the potential witness. 349 F.3d at 151. Under the circumstances, we held that counsel’s visit to the witness “was reason enough for his disqualification.” Id. at 152. Nothing we said in Merlino can enhance this record or create the required balancing where there was none.
Given the state of this record and the absence of the balancing required under Voigt, I believe the District Court’s removal of defense counsel was arbitrary.
II. Tinsley’s Hearsay Argument
Tinsley also argues that the District Court erred in excluding the testimony of Kadedra Holmes. He claims that evidence was admissible either under the Rule 803(3) state-of-mind exception to the hearsay rule, or as an excited utterance under Fed.R.Evid. 803(2). The majority rejects his claim, not because Tinsley is wrong, but because of the “minimal proffer [he] made at the time.” Maj. Opn. at 436. Although I concede that it is a “close call,” I disagree with the majority’s conclusion that the proffer precludes relief. I also disagree with the majority’s statement of the applicable standard of review.
When offering Holmes as a witness, defense counsel stated that “she was present with Mr. Tinsley when he received threatening phone calls on his cell phone.” App. at 615. In arguing for the admission of that evidence, counsel stated that he was offering it:
one, for a nonhearsay purpose, and that is his state of mind. Whether these particular people were really going to kill him or not, I’m not offering it for the truth of the matter asserted ... But this is classic state of mind evidence. It goes to his state of mind in terms of what he reasonably believed, and it gives us an alternative explanation, alternate from the furtherance of the drug traffic offense explanation for possession a firearm. So that’s the purpose of it, the nonhearsay purpose for state of mind.
And even if, as counsel suggests, there were a hearsay issue here, this is clearly an excited utterance. But that is not really what I need to offer it for. Just for his state of mind is because it goes to the intent which is what the inference either way is. (sic). Whether its for self protection or whatever it’s for a furtherance of drug trafficking, it’s an intent issue, a state of mind issue. This is classic state of mind evidence.
App. at 615-16.
A short while later, after Holmes took the witness stand, defense counsel asked for a sidebar conference during which he again asked that Holmes be permitted to testify about the threatening phone calls. Counsel again argued that Holmes was present when phone calls were made to the defendant’s cell phone. Defense counsel argued that Tinsley told Holmes that “the threats — that I have just been threatened with my life, so she is aware of it. It clearly goes to state of mind, his state of mind, and is clearly relevant. Its not being offered for hearsay purposes, and I would renew my request to offer that evidence. It’s classic non-hearsay purpose is state of mind.” App. at 623.
My colleague’s rejection of that argument is based upon an ultra-technical application of the rules of evidence. They explain: “[t]he proffer ... did not include any indication that Holmes would testify that Tinsley said, ‘I’m afraid’ — an actual statement of his state of mind. There was no abuse of discretion in excluding evidence based on this proffer.” Maj. Opn. at 436. Yet, in rejecting Tinsley’s Sixth Amendment argument based upon the Dis *441 trict Court’s failure to articulate the required balance, the majority proclaims it “will not elevate form over substance and require a District Judge to state explicitly his or her cognizance of a defendant’s Sixth Amendment right to counsel!.]”[5] Maj. Opn. at 435. However, we are willing to elevate form over substance in denying Tinsley relief by relying upon a very technical interpretation of Tinsley’s proffer and thereby upholding a decision to deny admissible testimony.
Tinsley was clearly attempting to have Holmes testify that Tinsley had been threatened. Evidence of the purported threats was not hearsay. See United States v. Saada, 212 F.3d 210 (3d Cir. 2000). The testimony was not offered to establish the truth of any threat of harm, but to establish the theat was made, and therefore support Tinsley’s claim that he had the gun for self defense unrelated to any involvement with illegal drugs. In Saada, we stated: “[N]ot every extrajudicial statement constitutes hearsay. Rather, [i]f the significance of an offered statement lies soley in the fact that it was made, no issue is raised as to the truth of the matter asserted, and the statement is not hearsay.” Id. at 218 n. 8 (citation and internal quotations omitted).
I realize that defense counsel did not argue that the purported threats amounted to a “verbal act,” and to that extent I agree his proffer was lacking. However, the District Court’s ruling was not based upon that technicality, nor the one relied upon by my colleagues. Rather, in explaining the rejection of that testimony, the court stated: “I’m not going to permit it because the government has absolutely no way of testing the veracity. And while you may be entering it for a state of mind, it really does rely upon the truth of the matter of what was said, and I’m not going to permit it.” App. at 623-624.
However, admissibility of evidence does not turn on the ease with which the party opponent can refute its veracity. Testimony that is admissible under the Rules of Evidence is not transformed into inadmissible testimony merely because the party opponent has only cross-examination to attack its accuracy. Nor is nonhearsay transformed into hearsay merely because jurors may infer the truth of matters that are not offered for the truth of the assertion. Were that the rule, there would be precious few, if any, exceptions to the hearsay rule as the same problem exists with almost any excited utterance or state of mind testimony. In fact, the problem is endemic in the nature of hearsay and its exceptions and is present whenever a court instructs a jury not to accept an out of court statement for the truth of the matter but for the limited purpose of the applicable exception to the hearsay rule. Here, the court’s concern that the jury would misuse the evidence should have been addressed by giving a limiting instruction, not by preventing the jury from hearing the testimony.
The majority reviews this claim of error for an abuse of discretion. However, the District Court’s rejection of Holmes’ testimony was based upon an erroneous interpretation of the Rules of Evidence. Our review of the District Court’s interpretation of the Federal Rules of Evidence is plenary; we do not review legal error for an abuse of discretion. See United States v. Brown, 254 F.3d 454, 458 (3d Cir.2001). The latter is applied to evidentiary rulings “premised on a permissible view of the law.” United States v. Pelullo, 964 F.2d 193, 199 (3d. Cir.1992).
*442 Tinsley’s defense was, in part, that he possessed the gun because he had received threats unrelated to any involvement with drugs. The jury certainly may have rejected that claim even if it had heard Holmes’ testify about the alleged threats, but Tinsley was entitled to rely upon that testimony in placing his defense before the jury. Accordingly, I am not comfortable relying upon an argument that precluding Holmes’ testimony was harmless error. See, e.g., Government of the Virgin Islands v. Knight, 989 F.2d 619, 630 (3d Cir.1993) (District Court’s improper exclusion of evidence is not harmless error when it is highly probable that the error contributed to the jury’s judgment of conviction). The jury had to decide whether the gun was possessed in connection with Tinsley’s drug distribution or for self-defense unrelated to that criminal activity.
The jury did hear evidence that he tried to break up a barroom fight several months before his arrest. That evidence, by itself, could have raised a reasonable doubt about why Tinsley had the gun he was arrested with. However, Holmes’ testimony about telephoned threats may well have given the testimony about the barroom fight an added dimension that could have raised a reasonable doubt about his motive for having the gun. Since the jury was not allowed to hear that testimony, I must respectfully disagree with the analysis of my colleagues.

. The majority notes that disqualification of an attorney has been upheld where the attor *439 ney "might be called as a witness,” Maj. Opn. at 435 (emphasis in original). I agree that it is the potential of being called as an adverse witness rather than the certainty that raises concerns about the administration of justice. Nevertheless, I am troubled because, based upon uncontradicted representations at oral argument, it appears that the government never listed Tinsley's attorney as a “potential” witness before the District Court. That unexplained omission is troubling given the prosecution’s reliance on counsel’s potential testimony as grounds from disqualifying him. I find that contradiction difficult to understand unless the advocacy in the District Court included a bit of adversarial "gotchya.”

. Of course, it is not the court’s knowledge of Tinsley's right to counsel that is at issue, but whether the court balanced that right on the record.