**UNITED STATES of America, Appellee,**

v.

**Kevin RANKIN, Appellant.**

**No. 84–1562.**

United States Court of Appeals,
Third Circuit.

Argued Nov. 4, 1985.

Decided Jan. 6, 1986.

F. Emmett Fitzpatrick (argued), Philadelphia, Pa., for appellant.

Louis R. Pichini, (argued), Sp. Atty., Edward S.G. Dennis, Jr., U.S. Atty., Philadelphia, Pa., William C. Bryson, Dept. of Justice, Washington, D.C., for appellee.

Before SEITZ, WEIS, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The scheduling of trials involving busy lawyers is a difficult problem of court administration that is compounded when both state and federal courts compete for the time of the same attorneys. To meet this concern, the courts in Philadelphia adopted a compact to honor the commitments of counsel while actually in trial. In the case at hand, the district judge denied a continu-

ance requested by the defendant because his counsel was engaged in the state court. As a result the defendant was forced to proceed with an appointed lawyer. Although the defendant's right to the services of specific counsel is not absolute, we conclude that in the circumstances here, the deprivation constituted an unnecessary infringement that requires the grant of a new trial.

Defendant Rankin was charged with two counts of conspiracy under 21 U.S.C. § 846 to distribute heroin and other controlled substances, including cocaine. The indictment also contained six counts of using a telephone to facilitate the conspiracies, 21 U.S.C. § 843(b). After a sixteen-day jury trial, defendant was convicted of all counts and was sentenced to the maximum term of fifty-four years of imprisonment.

Rankin was one of fourteen persons named in an indictment that contained thirty counts alleging a large scale illegal drug operation. At the time of arraignment in September 1983, Rankin retained F. Emmett Fitzpatrick, an experienced and competent criminal defense attorney, to represent him.

Because of the complexities of the multi-defendant case, continuances were granted to permit adequate discovery and pretrial procedures. On February 1, 1984, Fitzpatrick began a murder trial in the Court of Common Pleas of Philadelphia County. The state proceeding was in progress when on March 26, 1984, the district court designated the case at hand as a "special listing," which was to take precedence over all attachments of counsel occurring after that date.

On April 24, 1984, the district judge convened a pretrial conference, calling to the attention of all counsel that the trial was to begin on June 4, 1984. Fitzpatrick was still engaged in the state court but advised the district judge that the murder trial would probably conclude before June 4.

At another pretrial conference on May 8, 1984, the district judge announced that Fitzpatrick's availability for the June 4 trial seemed unlikely and informed defendant Rankin that he should retain alternate counsel. Fitzpatrick once again stated that he expected to be free by June 4. In addition, he called attention to the terms of a compact between the state and federal trial courts in Philadelphia. This agreement provided generally that a lawyer trying a case in one forum would be considered unavailable and would not be expected to appear before the other until the trial was concluded.

Fitzpatrick appeared in the district court on June 4 to advise that the murder trial was continuing and would be finished about the end of the month. On that same morning, ten of the defendants in this case pleaded guilty. One other remained a fugitive, and another, a hospital patient, signed a memorandum agreeing to plead guilty. Only Rankin's co-defendant Giangrante persisted in a demand for an immediate trial.

On the following day, June 5, the district judge directed Rankin to obtain alternate counsel by noon. Rankin chose instead to file a petition for mandamus with this court. Giangranti entered a guilty plea on June 12, leaving only Rankin to be tried. One week later, this court denied the petition for mandamus,[1] and on June 20 the district court appointed a lawyer for Rankin. Counsel was given approximately one month to prepare the case. Jury selection began on July 18, and verdicts were returned against Rankin on August 10, 1984.

---

1. The denial of the mandamus petition does not establish law of the case in this appeal. The scope of review in a mandamus matter differs greatly from that on appeal, *see Will v. United States,* 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), and we question whether mandamus may be invoked to challenge a matter such as the denial of a continuance, which falls within the trial judge's discretion. *See Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980); *United States v. Mehrmanesh,* 652 F.2d 766 (9th Cir.1980). Under the circumstances, the denial of mandamus cannot be viewed as a ruling on the merits of the issue presented here. *See Skil Corp. v. Millers Falls Co.,* 541 F.2d 554, 563 (6th Cir.1976) (Adams, J., dissenting).

Fitzpatrick's case in the state court had concluded on August 2.

The government introduced evidence from which the jury found that Rankin, an attorney, was part of the drug operation headed by co-defendant Martorano. Much of the evidence consisted of out-of-court statements of co-conspirators. In addition, the prosecution produced audio and video-tapes of Rankin's conversations with undercover government agents.

On appeal, defendant contends that he was denied the right to representation by counsel of his choice and that various evidentiary rulings by the trial court were erroneous. The former contention requires more extended discussion, and accordingly we will address it first.

### I.

Rankin did select counsel but was denied representation at trial by that lawyer. That this deprivation occurred as a result of the court's refusal to grant a continuance does not obscure the nature of the right at stake. *Chandler v. Fretag*, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954).

We have stated that "the most important decision a defendant makes in shaping his defense is his selection of an attorney." *United States v. Laura*, 607 F.2d 52, 55 (3d Cir.1979). "Attorneys are not fungible," and "[t]he ability of a defendant to select his own counsel permits him to choose an individual in whom he has confidence." *Id.* at 56. Recognizing the importance of these interests, we held "[i]f a defendant chooses a particular lawyer, a court may not take arbitrary action prohibiting the effective use of that counsel." *Id.* at 57.

■ The right, however, is not absolute and must be balanced against the requirements of the fair and proper administration of justice. *Davis v. Stamler*, 650 F.2d 477 (3d Cir.1981). A defendant will not be permitted to subvert judicial proceedings or cause undue delay by designating a certain lawyer. Thus, representation that constitutes a breach of professional ethics need not be tolerated. *United*

*States v. Dolan*, 570 F.2d 1177 (3d Cir. 1978). Nor must a court honor a belated request made not in good faith but as a transparent ploy for delay. *Morris v. Slappy*, 461 U.S. 1, 13, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610 (1983). The ability to choose counsel "is a right and proper tool of the defendant; it cannot be used merely as a manipulative monkey wrench." *Gandy v. State of Alabama*, 569 F.2d 1318, 1323 (5th Cir.1978).

■ Although the right of representation by chosen counsel is subject to limitations it may not be hindered unnecessarily. Interfering with a defendant's efforts to secure counsel and thereby forcing on him representation by an undesired court-appointed attorney may amount to denial of a constitutional right. For that reason, "[a] defendant's choice of counsel is not to be dealt with lightly or arbitrarily." *United States v. Flanagan*, 679 F.2d 1072, 1076 (3d Cir.1982), *rev'd on other grounds*, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984).

In *United States ex rel. Carey v. Rundle*, 409 F.2d 1210 (3d Cir.1969), this court was presented with a contention that a trial judge had abused his discretion by denying a continuance so that a defendant could obtain the services of his chosen lawyer. We rejected the defendant's argument and discussed the ripple effect a postponement could have on a court's calendar, particularly in a large metropolitan community. We noted the need for a firm trial date to enable the government to assemble its witnesses and schedule its attorneys. Not only can a continuance have a disruptive effect on court administration, but it may also "prejudice the rights of another defendant [whose] trial is delayed." *Id.* at 1214. We went on, however, to point out the difficulty posed by "an arbitrary and inelastic calendaring of cases without due regard, for example, to the existence of conflicting demands for the service of a particular counsel by different courts or by the schedules within a multi-judge court." *Id.* at 1215.

That particular problem is presented in this case. Here, we have no belated request, no bad faith, no maneuvers intended to delay. Rather, we are confronted with the serious, frustrating, and recurring problem of allocating busy trial counsel's time among busy and overburdened courts in the state and federal systems. Because lawyers are not "fungible", and because in the real world trial retainers are not evenly distributed, some accommodation must be reached.

The difficulty is especially acute in the large urban areas where the state and federal trial courts are in competition for the time of the leading trial lawyers. Both court systems have burgeoning dockets, and both are conscientiously attempting to process their cases as rapidly as possible. This situation frequently results in simultaneous requests for the presence of a particular trial lawyer by state and federal courts. Because the laws of physics make dual compliance impossible, the trial lawyer faces an unhappy choice—whether to be held in contempt in state or federal court. The courts' irritation is compounded by a few elusive practitioners who play one court against the other—purporting to be in one forum or the other but actually not trying a case in either.

After some unpleasant incidents of this nature, in 1973 the state and federal courts in the Philadelphia area agreed on a cooperative plan for allocating trial lawyers. The courts adopted local rules and practices so that attorneys would appear in the two forums on an alternating basis. A lawyer actually trying a case in either state or federal court is recognized by the other forum as engaged. On termination of that case, counsel must notify the appropriate clerk and be available for an assignment in the other court system. Provision is also made for "special listings" in exceptional cases to grant "priority over all other trial engagements thereafter scheduled." [2]

This arrangement was reaffirmed in 1975 by correspondence between the chief judge of the District Court and the administrative judge of the Court of Common Pleas of Philadelphia.[3]

The problem of conflicts between the state and federal court systems is a serious one, and the solution achieved by the joint action of the Eastern District and the Philadelphia Court represents an intelligent and thoughtful compromise. Only through strict observance of the compact by both jurisdictions will the efforts be successful. Thus, the existence of the compact is a factor that must weigh heavily in the decision of a court to grant or deny a continuance in a case such as this one. That is not to say that it is the only consideration. Just as the right to select counsel is not absolute, so too in exceptional circumstances modifications of the compact's general rule may become unavoidable.

The district judge here was assigned a case involving many defendants and covering many counts. Assembling busy counsel for all parties for a lengthy trial of this nature is no simple task. Added to the logistical difficulties are the imperatives of the Speedy Trial Act. Understandably the district judge invoked the special listing provision to ensure the availability of the many lawyers for a trial scheduled some ten weeks later. Fitzpatrick then held a reasonable expectation that the state trial would conclude in time. If so, he would not need to invoke the provisions of the compact under which the specially listed federal case could not take priority over the state trial, also a special listing, which had already begun.

2. The state court's general regulation 73–2 sets forth the terms of the inter-court compact. The relevant portions of that document appear as an Appendix to this opinion. The same understanding is memorialized in a document entitled "Calender Control" on file with the Clerk of the District Court.

3. A similar cooperative agreement has been in effect between the District Court for the Western District of Pennsylvania and the Allegheny County (Pittsburgh) Court of Common Pleas since 1963. For an account of the somewhat unorthodox means by which this compact was arranged, see Weis, *History of the Allegheny County Academy of Trial Lawyers.* Pittsburgh Legal Journal 3, 9–10 (May 1984).

As the trial date approached and Fitzpatrick's availability became increasingly questionable, the district judge was still faced with a multi-defendant, multi-count trial and at least one defendant who was insisting on his speedy trial rights. Had those conditions persisted, a balancing of Rankin's right to representation by his chosen counsel against competing factors might have become necessary. Desirability of proceeding with the trial on June 4 might have required consideration of such alternatives as variance from the compact or severance of Rankin's case. However, as so often happens, when the time for trial actually arrived, the determined opposition of the defendants collapsed, and by June 12 the only case remaining to be tried was that of Rankin.

At that point, the conflicting considerations had diminished, and the situation had been greatly simplified. Fitzpatrick was the only defense counsel who was unavailable, and according to the compact, he was to report to the federal court on conclusion of the state case. Rankin was not pressing for an immediate trial but, in fact, wished to wait for Fitzpatrick. In sum, as of June 12 the situation presented was the typical one envisioned by the compact. Had its provisions been observed, Rankin's right to select his own counsel would have been preserved. In those circumstances, recognition of his rights and the important interests served by the compact furnished ample grounds for delay.

The matter of a continuance is traditionally within the discretion of the trial judge who must necessarily be given wide latitude in scheduling trials. *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983); *United States v. Riccobene*, 709 F.2d 214, 231 (3d Cir.1983); *Paullet v. Howard*, 634 F.2d 117 (3d Cir.1980). However, a rigid insistence on expedition in the face of a justifiable request for delay can amount to a constitutional violation. The answer must be found in the circumstances present in the particular case. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964).

■ We are called on to decide only the propriety of the judge's action in the circumstances existing after June 12, when Rankin's case was the sole one remaining to be tried. As noted, serious countervailing considerations to a continuance had disappeared by that time. Nevertheless, the trial judge apparently did not realize that he was required to reevaluate the situation. Having disposed of the other cases, he naturally became preoccupied with the prompt disposition of the one remaining. While the situation is understandable, the failure to reassess the circumstances denied Rankin's substantial rights and violated the terms of the inter-court compact. In that sense, the refusal to continue the trial date amounted to arbitrary action.

Although the trial court's ultimate decision to deny a continuance is disapproved, we would be remiss if we failed to note with approbation the district judge's practice of communicating with the state judge during the pendency of the state trial. Such cooperation is to be encouraged as a sensible and mature way of lessening conflict between state and federal courts. *Cf. United States v. Wendy*, 575 F.2d 1025, 1031 n. 23 (2d Cir.1978).

■ The government argues that Rankin was competently represented by appointed counsel at trial. That, however, is not a relevant consideration. A defendant who is arbitrarily deprived of the right to select his own counsel need not demonstrate prejudice. "Obtaining reversal for violation of such a right does not require showing of prejudice to the defense, since the right reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding." *Flanagan v. United States*, 465 U.S. 259, 268, 104 S.Ct. 1051, 1056, 79 L.Ed.2d 288 (1984). In this respect, the denial of one's selected lawyer is quite different from a claim of ineffective counsel where a harmless error test is appropriate. The right at stake here is similar to that of self-representation. "The right is either respected or denied; its deprivation cannot be harmless." *McKaskle v. Wiggins*, 465

U.S. 168, 177 n. 8, 104 S.Ct. 944, 951 n. 8, 79 L.Ed.2d 122 (1984). *See also United States v. Laura,* 607 F.2d 52, 58 (3d Cir. 1979) (defendant "need not show that the dismissal [of counsel] was prejudicial.")

We emphasize our adherence to the principle that the trial judge has broad discretion in granting or denying continuances. Nevertheless, in the unusual circumstances here the denial of a postponement requires the grant of a new trial.

## II.

Defendant contends that the admission of declarations by co-conspirators and the jury instructions on conspiracy were additional errors. No objection was made to any of these points during the trial, and we ordinarily would not review those contentions at this time. However, since the case is being returned for a new trial, it is appropriate to comment on the points to eliminate the necessity for future appeals.

We find no error in the charge on conspiracy and note that the confrontation problem in connection with the co-conspirators' statements was argued on December 3, 1985 before the Supreme Court of the United States in *United States v. Inadi,* — U.S. —, 105 S.Ct. 2653, 86 L.Ed.2d 271 (May 28, 1985), *on certiorari from,* 748 F.2d 812 (3d Cir.1984). A decision may be expected before this case is retried.

Defendant also complains about the trial judge's questioning of a character witness in chambers in the presence of counsel, defendant, and two FBI agents. Defendant suggests that this interrogation had a chilling effect on the witness. The record does not demonstrate that to be so, but since the episode raised questions about the appearance of judicial impartiality, we suggest that the procedure not be repeated on retrial.

Accordingly, the judgment of the district court will be vacated, and the case will be remanded for a new trial.

APPENDIX TO OPINION OF
THE COURT

*General Regulation 73–2*

\*　　\*　　\*　　\*　　\*　　\*

(2) *United States District Court in Philadelphia*

The District Court will recognize as engaged all counsel of record in any case actually on trial before a Common Pleas Court Judge and in cases appearing in the first 20 cases on the Major Case List and in the first 15 cases published on the General Jury Trial List. The engagement in the case actually on trial shall be effective until the trial terminates by verdict or otherwise and in the case appearing in the first 20 or 15 for a period of three (3) days after said case reaches that position on the respective list.

(3) Both the Common Pleas Court and the United States District Court will observe the procedure of alternating assignments, i.e., counsel assigned to trial in the Common Pleas Court must upon completion be available for assignment in the United States District Court before accepting another assignment in the Common Pleas Court and vice versa.

No counsel shall try successive cases in either court except by agreement between the respective judges involved as set forth in Paragraph 3 of Section "D" (4) hereof.

(4) *General*

*Counsel Must Report Case Terminations To Appropriate Clerks*

Counsel must immediately report the termination of all trials (by verdict or settlement conference) to the appropriate Clerk of the United States District Court or the Common Pleas Court. Failure to do so will result in the imposition of appropriate sanctions.

\*　　\*　　\*　　\*　　\*　　\*

*Problems of a Particular Case to be Taken up with Appropriate Judge*

Problems not otherwise covered in this regulation regarding the listing or assignment of a case for trial shall be taken up in

the United States District Court with the Judge on whose individual calendar the case appears and in the Common Pleas Court with the Calendar Judge.

E. *Advance Special Listings*

In cases involving several busy lawyers, key witnesses from distant points, especially important issues, or other special circumstances, a judge may grant a special listing in advance. Such advance special listing shall take priority over all other trial engagements thereafter scheduled.