## GOVERNMENT OF THE VIRGIN ISLANDS
### v.
## JUNIEL CHARLESWELL, Appellant

No. 96-7469

United States Court of Appeals for the Third Circuit

May 23, 1997

Rhys S. Hodge, Esq., St. Thomas, U.S.V.I., *for Appellant.*

Julio A. Brady, Esq., (Attorney General), Paul L. Gimenez, Esq., (Solicitor General), and Frederick Handleman, Esq., (Assistant Attorney General), St. Thomas, U.S.V.I., *for Appellee.*

BECKER, ROTH, and WEIS, *Judges*

### OPINION OF THE COURT

WEIS

Defendant appeals the trial court's denial of a continuance. We agree that, in the circumstances here, the limited availability of courtrooms did not outweigh defense counsel's need for additional time, necessitated by a sudden family emergency, to prepare for trial. Accordingly, we will grant a new trial. However, we reject the defendant's argument that the absence of a third judge on a panel of the Appellate Division of the District Court of the Virgin Islands deprived the court of power to decide an appeal.

Defendant was convicted on various counts of assault, possession of a deadly weapon, and destruction of personal property. The Appellate Division of the District Court of the Virgin Islands reversed the judgment because of prosecutorial misconduct. On appeal from that decision, we reversed, finding that, although the prosecution had acted improperly, the trial court's failure to grant a mistrial *sua sponte* did not amount to plain error. *Government of the Virgin Islands v. Charleswell (Charleswell I)*, 24 F.3d 571, 576 (3d Cir. 1994).

We remanded to the Appellate Division to address three other points that the parties had argued before the district court, which the court had not discussed in its opinion. *Charleswell I*, 24 F.3d at 577. On remand, a two-judge panel of the Appellate Division addressed the remaining issues and affirmed the judgment. *Charleswell v. Government of the Virgin Islands (Charleswell II)*, 167 F.R.D. 674 (D.V.I. 1996). Defendant has appealed.

The facts are stated in detail in our earlier opinion and need not be repeated at length here. Briefly, defendant was an off-duty police officer who scuffled with a fellow officer and fired several handgun and shotgun blasts in and around two different police stations. He later surrendered without harm to any person.

The status of the defendant's legal representation before trial is somewhat ambiguous. Although the docket showed that the Territorial Court assigned counsel shortly before the scheduled arraignment on October 18, 1990, counsel asserts that he never received notice of the formal appointment, and that allegation is not contradicted. Counsel apparently labored under the assumption that he was not court-appointed because he discussed with defendant the possibility of being retained as a paid attorney.

No agreement on representation had been solidified by December 1990 when the prosecutor submitted an offer of a plea bargain to the defense lawyer. Counsel encountered considerable difficulty in meeting with his client to discuss the offer because on one occasion defendant had been arrested on an unrelated matter and at another time he had been admitted to the mental ward of a hospital. Defendant eventually rejected the plea offer during a chance meeting with the lawyer at the courthouse.

On January 29, 1991, defendant and counsel both appeared at a pretrial conference even though the arrangements to pay a retainer

remained incomplete. Counsel notified the court in that meeting that he would be off island beginning Wednesday, February 13, 1991. At that point, seemingly, no one foresaw a problem with setting the trial for February 11 and concluding on February 12, 1991.

On February 5, 1991, counsel went to the mainland because of the sudden death of a family member and did not return to the Islands until Sunday evening, February 10. He requested a continuance on the following morning because the emergency had left him with inadequate time to prepare for trial and, to complicate matters further, he had not been paid. The court appointed him as counsel and refused to delay the trial.

During the trial, in an effort to negate *mens rea*, defense counsel sought to introduce the testimony of a physician, Dr. Lu, as to the defendant's diminished mental capacity on the day of the charged offense. The trial judge excluded that evidence because the defense had failed to give the prosecution the appropriate written notice of the intention to rely upon expert testimony, as required by Federal Rule of Criminal Procedure 12.2(b).

After his conviction, defendant appealed to the Appellate Division of the district court, citing these rulings in addition to a claim of prosecutorial misconduct. In its initial opinion, the Appellate Division decided only the prosecutorial misconduct issue. Pursuant to our instructions on remand, the Appellate Division reviewed each of the rulings — the exclusion of the physician's testimony, the denial of a continuance, and the denial of a motion for judgment of acquittal. The court found no error and affirmed the judgment. *Charleswell II*, 167 F.R.D. at 680.

In addition to renewing his challenge to those three points in this Court, defendant disputes the Appellate Division's authority to decide his case on remand with a panel of two judges. It appears that one member of the district court's original panel who had heard the arguments and participated in the initial decision left the bench before we remanded the case. The Appellate Division then proceeded to adjudicate the case with the remaining two judges of the original panel. Defendant argues that the Appellate Division may not "determine" an appeal unless the panel consists of three judges.

## I.

Title 48 U.S.C. § 1613a establishes the jurisdiction of the Appellate Division of the District Court of the Virgin Islands. Subsection (b) reads as follows:

> Appeals to the District Court of the Virgin Islands shall be heard and determined by an appellate division of the court consisting of three judges, of whom two shall constitute a quorum . . . The concurrence of two judges shall be necessary to any decision by the appellate division of the district court on the merits of an appeal . . .

Defendant contends that the terms of the statute entitled him to have his case "heard and determined" by three judges, not two. We do not accept his argument. The case was heard by a three-judge panel. However, by the time the panel was required to decide the issues presented in the present appeal, one judge was no longer in office. Under these circumstances, the statutory provision that two judges constitute a quorum of the court and may decide the merits of a case, assuming that there is agreement on the disposition, is satisfied.

The Court of Appeals for the Ninth Circuit decided a similar issue in *De Vera v. Blaz*, 851 F.2d 294 (9th Cir. 1988). In that case, an appeal to the Appellate Division of the District Court of Guam pursuant to 48 U.S.C. § 1424- 3(b), a statutory provision identical to the one before us, was heard by a panel of two judges after the third had recused. The Court of Appeals held that the procedure was proper: "Because the statute expressly authorizes hearing and decision of appeals by a quorum of two appellate division judges, no waiver or stipulation by either of the parties was required in order for the court to proceed without a third judge." *Id.* at 296.

This case presents a narrower issue. If one of the three judges originally constituting a panel is unable to participate in a final adjudication, a quorum of the remaining two judges who agree on the decision may validly dispose of the case.

Analogous provisions apply to the Courts of Appeals. *See* 28 U.S.C. § 46(d); Third Circuit LAR 101.2. In *Murray v. National Broadcast. Co.*, 35 F.3d 45, 47 (2d Cir. 1994), the Court reviewed the

legislative history of section 46(d) and pointed out that when an appeal is assigned in thefirst instance to a panel of three judges, a quorum of two may dispose of the case in the event that one of the original three becomes unable to proceed. The Court noted that consideration by three judges is the preferred method of adjudicating appeals, but in circumstances like those present here, the efficient use of judicial resources must control. *Id.* at 48.

We conclude, therefore, that the Appellate Division of the District Court of the Virgin Islands properly considered the defendant's appeal on remand from this Court.

## II.

The trial court denied the defendant's request for a continuance despite counsel's statement that he needed additional time for preparation. As we noted earlier, counsel's status as privately-retained or court-appointed was not resolved until the day of trial.

We are persuaded that, although defense counsel believed he could move to withdraw because his retainer had not been paid, it is unlikely that such a request would have been granted. *Cf. United States v. Bertoli*, 994 F.2d 1002, 1019 (3d Cir. 1993) (private counsel for a criminal defendant does not have the unilateral right to withdraw by alleging nonpayment because counsel should have obtained a satisfactory retainer before undertaking the representation). Here, counsel had, in fact, represented defendant through the preliminary stages including the pretrial conference and plea negotiations. Whatever doubt might have existed about the arrangement ended when the trial court re-appointed the lawyer shortly before the trial began. Counsel's status, therefore, presented no basis in and of itself for a delay of the trial.

The request for continuance, however, had a far more serious basis, one that was beyond counsel's control, namely the unexpected death of a family member a week before the trial was scheduled to begin. This personal tragedy required counsel to travel to the mainland and hindered his ability, particularly because he was a sole practitioner, to prepare the case in the critical days before the trial. *Cf. United States v. Riccobene*, 709 F.2d 214, 231 (3d Cir. 1983) (continuance properly denied when lead counsel was unavailable for trial, but experienced and capable associate was).

The matter of a continuance is traditionally within the discretion of the trial judge who must be given wide latitude in arranging the court's schedule. *United States v. Rankin*, 779 F.2d 956, 960 (3d Cir. 1986). However, as the Supreme Court pointed out in *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964), "a myopic insistence upon expeditiousness in the face of a justifiable request for a delay can render the right to defend with counsel an empty formality."

In *United States ex rel. Carey v. Rundle*, 409 F.2d 1210, 1214-15 (3d Cir. 1969), we pointed out that, in exercising their discretion, trial judges must balance the conflicting demands of court administration with the rights of the accused as well as those of co-defendants and others awaiting trial who would be affected by the consequences of a delay. *See also United States v. Kikamura*, 947 F.2d 72, 78 (3d Cir. 1991); *United States v. Fischbach & Moore, Inc.*, 750 F.2d 1183, 1195 (3d Cir. 1984). As we asserted in Rankin, "a rigid insistence on expedition" despite a legitimate reason for delay may deprive an accused of due process of law. 779 F.2d at 960. Whether the court properly exercised its discretion depends upon the circumstances present in each particular case. *Id.*

Unlike cases where co-defendants were involved, *see, e.g., Riccobene*, no one else's rights was at stake here because Charleswell was the sole accused, nor is there evidence that other persons would have been adversely affected by a change in the trial schedule. In addition, there had been no previous continuances.

Because of other commitments that counsel had made based on notification to the various courts more than a month earlier, only February 11-12 were available for the Charleswell trial. The parties have not disputed that two days was adequate time to try the case.

While the two-day period that counsel had to try the case was sufficient, his opportunity for preparation, which had been disrupted by the unanticipated family crises, was critically deficient. As counsel explained to the trial court: "I had an emergency where my sister-in-law died and I had to go up to the states for the funeral — I got back and I don't see Mr. Charleswell here and I haven't had any contact with him and I want to alert the Court to this . . . . I can see in talking to him it was necessary to have Dr. Lu to get to the records of the defendant; to subpoena a lot of

people but I haven't had a chance to really sit down with Mr. Charleswell to try and prepare any kind of defense."

In contrast to the unforeseeable circumstance that frustrated defense counsel's preparation, the reason for refusing to delay the trial — a limitation on courtroom availability — was known in advance but beyond the control of the judge as well. It appears that Territorial Court judges were required to share courtrooms and were assigned the weeks in which they could try jury cases. As the trial judge stated in denying the continuance: "When I get my week for Jury, I've got to use it." Had the judge granted the continuance, he would not have been able to hear the case until some three weeks later when his turn in the "batting order" arose again.

We need not blind ourselves to the fact that lawyers frequently begin final trial preparation only shortly before the time when jury selection begins. It is reasonable to assume that here the necessary preparations would have occurred had not the family emergency intervened.

Weighed against the defense's dilemma was the understandable desire of the trial judge to utilize fully the time available to him for the use of a courtroom. While we sympathize with the judge's predicament, the substantial interest of defendant to have his case adequately prepared should have prevailed here. Inadequacy of physical facilities cannot justify infliction of an inferior defense upon an accused.

The unfortunate circumstances of this case illustrate the serious drawbacks of a courthouse planning philosophy that encourages sharing of courtrooms by a number of judges to promote efficiency in space utilization. Because not all courtrooms are used every day during a given year, the argument in favor of sharing has a superficial appeal. But the difficulties in scheduling the attendance of parties, litigants, lawyers, witnesses and jurors at a given location and at a given time, as well as the unpredictability of the length of any given trial or hearing are real and formidable obstacles to precise allocation of courtroom availability.

Courtrooms are special purpose facilities, just as are sports stadiums, churches, temples, and other essential structures that are not used on a daily basis and frequently stand idle. When a

courtroom is not available as the need arises, the result is a loss of efficiency in other phases of judicial administration. In this case, for example, had the judge had the opportunity to use his courtroom in the week that followed, he would likely have granted the continuance and eliminated the necessity for, and expense of, a new trial.

In considering the costs incurred by inadequacy of court facilities, experience teaches that the brick and mortar construction expense of building larger facilities may be less expensive in the long run than the other costs associated with delay in processing cases. The results of coping with an insufficient number of courtrooms demonstrates that the old adage of "penny wise and pound foolish" is particularly apt.

■ After close scrutiny of all the circumstances present in this case, we conclude that the denial of the continuance was not a proper exercise of discretion. Consequently, defendant is entitled to a new trial.

## III.

At the pretrial conference, counsel raised the possibility of a defense that he lacked the mental capacity to form the requisite *mens rea*. On the day trial was scheduled to begin, the trial judge ruled that the defense could be introduced. *See United States v. Pohlot*, 827 F.2d 889, 897 (3d Cir. 1987) (evidence bearing on mental abnormality may be admitted to negate mens rea). In a later ruling, however, the trial judge barred Dr. Lu's testimony because defendant had not complied with Federal Rule of Criminal Procedure 12.2(b) in giving reasonable written notice of intent to rely upon expert evidence.

Rule 12.2(b) provides that: "If a defendant intends to introduce expert testimony relating to a mental disease or defect or any other mental condition of the defendant bearing upon the issue of guilt, the defendant shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the attorney for the government in writing of such intention andfile a copy of such notice with the clerk. The court may for cause shown allow the late filing of the notice or grant additional time to the parties to prepare for trial." Moreover, at the request of

the government, the court may order a mental examination of defendant. Fed.R.Crim.P. 12.2(c).

The trial judge refused to allow the defendant's expert to testify because of the lack of notice to the government under Rule 12.2(b) and the government's consequent inability to secure a mental examination of defendant by its own expert. We cannot say the ruling was erroneous under the facts presented at trial.

We need not comment on the matter further because on remand there will be adequate time for the defense to seek court authorization to allow filing of the proper notification before trial. Because we cannot anticipate the circumstances affecting the grant or denial of such a motion at this stage, we do not intimate any views on the matter.

Defendant also contends that the verdict was against the weight of the evidence. We have reviewed the record and are persuaded that this contention is without merit.

The judgment of conviction will be reversed and the case will be remanded to the Appellate Division of the District Court of the Virgin Islands with directions to remand to the Territorial Court for a new trial.