**UNITED STATES of America,**

v.

**Rashid PRYOR, Appellant.**

No. 07–1018.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) April 9, 2008.

Filed: April 21, 2008.

---

George S. Leone, Office of United States Attorney, Newark, NJ, for Appellee.

Donna R. Newman, Jersey City, NJ, for Appellant.

BEFORE: SMITH, HARDIMAN and COWEN, Circuit Judges.

## OPINION

COWEN, Circuit Judge.

Defendant–Appellant Rashid Pryor pled guilty to one count of conspiracy to possess cocaine with the intent to distribute. He was sentenced to a within-Guidelines term of 100–months imprisonment with five years of supervised release. Pryor appeals from his sentence, claiming that the District Court violated his Sixth Amendment right to be represented by the counsel of his choice.

The District Court exercised jurisdiction pursuant to 18 U.S.C. § 3231. Our review is under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The Sixth Amendment claim is reviewable by us because it is not within the scope of the appellate waiver provision of Pryor's plea agreement. However, because Pryor raises this claim for the first time on appeal, we review only for plain error. *United States v. Merlino*, 349 F.3d 144, 161 (3d Cir.2003).

Pryor argues that the District Court violated his Sixth Amendment right to his counsel of choice when it coerced him into accepting the representation of Donna Newman over that of Paul Bergrin. He contends that the coercion consisted of the District Judge delaying his sentencing on numerous occasions, and conducting lengthy and unnecessary waiver colloquies. Because we find no error, plain or otherwise, in the District Court's approach in the case, we affirm.

Rashid Pryor, along with co-defendants Atif Amin and Oscar Larsen, was charged in a federal criminal complaint with distribution of narcotics. Pryor agreed to plead guilty, and was scheduled to enter his plea before United States District Judge Faith S. Hochberg on May 18, 2005. Here, the potential conflict of interest arose because Paul Bergrin, Pryor's attorney, had also represented Jason Hannibal, one of Pryor's alleged co-conspirators, in a prior state court prosecution arising out of the same narcotics conspiracy as that underlying Pryor's case.[1]

Judge Hochberg was first alerted to the potential conflict when the Government moved to disqualify Bergrin as Pryor's counsel a few weeks prior to Pryor's scheduled plea hearing. At the May 18, 2005 hearing, Judge Hochberg inquired about the problem, and engaged in a colloquy with Pryor about the conflict. After being informed of the situation, Pryor proffered a conflict waiver, which the Court accepted. Thereafter, Judge Hochberg conducted the requisite Rule 11 plea colloquy, and indicated she would accept Pryor's plea as long as Hannibal also waived the conflict. Hannibal subsequent-

---

1. Hannibal was originally arrested in December 2003 by New Jersey authorities on state drug charges, but his case was subsequently adopted by federal prosecutors. Bergrin's representation was limited to the state court proceedings; Hannibal was represented by different counsel in federal court. In July 2004, Hannibal, along with Hakeem Curry and a number of other individuals, including Amin and Larsen (Pryor's co-defendants in the present case), were indicted for their participation in a large-scale conspiracy for the distribution of narcotics. But for the fact that Pryor had already agreed to plead guilty, the Government indicated that Pryor would have been charged in the Hannibal–Curry indictment as well.

ly did so. Pryor's sentencing was then scheduled for September 11, 2006.

In the summer leading up to Pryor's sentencing, Judge Hochberg presided over a lengthy narcotics conspiracy trial involving Hakeem Curry, during which two additional developments raised questions about the adequacy of Pryor's legal representation. First, a witness at trial testified that Bergrin was "house counsel" for the Curry drug organization, and that regardless of whom he purported to represent, Bergrin's loyalty was always with Curry. Second, at one point during the trial, Curry's attorney sought to call Pryor as a witness, and stated to the Court that Bergrin had no objections to Pryor testifying. Since Bergrin was not present during this discussion, Judge Hochberg assigned Donna Newman as special counsel to Pryor for the limited purpose of advising him as to his role as a potential witness. But, upon consultation with Newman about his Fifth Amendment rights, Pryor indicated that he would not testify for Curry. Curry's attorney ultimately opted not to call Pryor to the stand.

As a result of these developments, Judge Hochberg began Pryor's September 11, 2006 sentencing hearing with an inquiry into the nature of Bergrin's relationship with Curry and affiliates. Bergrin denied that he was currently representing anyone in connection with the Curry case, and stated that he had not represented Curry in "three or four years." JA at 74. The Court then explained the situation to Pryor, who indicated that he understood but still wanted to proceed with Bergrin. However, for reasons unrelated to the conflicts issue, the District Court adjourned the sentencing proceeding at Bergrin's request.

Soon thereafter, the Government discovered and submitted to the District Court an August 2006 letter in which Bergrin affirmatively stated that he was represent-ing Curry on appeal. In light of this letter, the Government argued that the Court should appoint Pryor independent counsel for sentencing. On November 20, 2006, Judge Hochberg questioned Bergrin about this letter; Bergrin again denied that he represented Curry, and contended that the letter was in error. Nevertheless, upon motion of the Government, the Court appointed Newman as special counsel, allowed her to meet privately with Pryor to discuss the matter, and reconvened the sentencing proceeding for later that same day. After consulting with Newman, Pryor again sought to waive the conflict. However, Newman then questioned whether the potential Curry–Pryor conflict was waivable at all, and if so, whether Curry would also have to waive. Because none of the attorneys present could answer these questions, Judge Hochberg adjourned the proceeding so that the issues could be fully briefed.

After reviewing the briefs, the Court concluded that Pryor could waive the conflict, and that Curry did not also have to waive. On December 18, 2006, the District Court proceeded to sentencing. Judge Hochberg began by recounting all of the relevant facts with regard to the conflict issue, after which Pryor indicated that he wanted to proceed with Newman as his counsel, and made clear that his decision was made of his own volition. JA at 200–01 ("The Court: And do you understand that it is solely your choice as to whether you wish to proceed to sentencing represented by either Mr. Bergrin or by counsel appointed by the court for you? The Defendant: Yes … The Court: What is your wish? The Defendant: I'm going to go with Miss Newman … The Court: Has anybody pressured you to make that decision? The Defendant: No, ma'am. Not at all."). Finally, after hearing arguments from both sides on the various Guidelines issues, the District Court imposed sentence.

The Sixth Amendment's guarantees encompass the right to be represented by one's counsel of choice. *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932). However, this right is not absolute, as the Sixth Amendment also ensures that every defendant will receive conflict-free representation. *United States v. Voigt,* 89 F.3d 1050, 1074 (3d Cir.1996) (right not unconditional); *United States v. Moscony,* 927 F.2d 742, 748 (3d Cir.1991) (right to effective assistance of counsel includes "the right to the attorney's undivided loyalty free of conflict of interest"). Thus, the presumption in favor of one's counsel of choice "may be overcome not only by a demonstration of actual conflict [of interest] but by a showing of a serious potential for conflict." *Wheat v. United States,* 486 U.S. 153, 164, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *see also Fuller v. Diesslin,* 868 F.2d 604, 607 (3d Cir.1989) ("while a defendant's choice may not be arbitrarily denied, a defendant's right to choose his own counsel must be balanced against the fair and proper administration of justice"). Furthermore, because of the federal judiciary's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession," where even a *potential* for conflict exists, courts may reject waivers of conflict-free representation and disqualify defense counsel without running afoul of the Sixth Amendment. *Wheat,* 486 U.S. at 160, 163, 108 S.Ct. 1692; *Moscony,* 927 F.2d at 749.

Initially, the record refutes Pryor's claim that the District Court unnecessarily delayed his sentencing on numerous occasions. That the Court granted a *defense* request for an adjournment, and subsequently continued the proceeding to allow briefing on an unanticipated but important legal question does not amount to coercion. *See Gov't of V.I. v. Charleswell,* 115 F.3d 171, 174 (3d Cir.1997) ("[t]he matter of a continuance is traditionally within the discretion of the trial judge who must be given wide latitude in arranging the court's schedule"). Nor is there merit to Pryor's assertion that there was no potential for a conflict of interest because his plea obviated a trial. On the contrary, conflicts arise from "divided loyalties due to [an attorney's] concurrent or prior representation of another client who is a co-defendant, a co-conspirator, or a government witness." *Moscony,* 927 F.2d at 749. The potential prejudice from an attorney's divided loyalties is not limited to any particular type of proceeding; while it may be true that most conflict issues arise in the trial context, it certainly does not follow that no conflicts of interest are possible absent a trial.

Regardless of whether an actual conflict existed, Bergrin's relationships with various of Pryor's alleged co-conspirators were undoubtedly sufficient to raise the *possibility* of a conflict. Indeed, under the unique factual circumstances of this case, the District Court would have been legally remiss had it not made inquiries to satisfy itself that Pryor's rights to constitutionally effective and conflict-free counsel were being honored. *See* Fed.R.Crim.P. 44(c)(2) ("The court must promptly inquire about the propriety of joint representation ... Unless there is good cause to believe no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel").

The Court did not coerce Pryor into giving up his right to choice of counsel by repeating inquiries necessitated by new developments, or by conducting colloquies to ensure that Pryor was always fully apprised of all of the relevant factual circumstances. *See Wheat,* 486 U.S. at 163, 108 S.Ct. 1692 (given the difficulties inherent in foreseeing the development of conflicts of interest, trial courts "must be allowed *substantial latitude* " in their handling of

conflicts issues) (emphasis added). Pryor's own statements, as well as those of both his attorneys, all indicate that Pryor knowingly, intelligently and voluntarily waived his Sixth Amendment right to be represented by Bergrin and instead sought to proceed with Newman as his counsel. *See Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible").

Because the record clearly demonstrates that the District Court did not violate Pryor's Sixth Amendment right to choice of counsel, the judgment will be affirmed.