NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4075
_____

UNITED STATES OF AMERICA

v.

GELEAN MARK a/k/a Kerwin
Gelean Mark,
                              Appellant
_____

On Appeal from the District Court
of the Virgin Islands – Appellate Division
Division of St. Thomas
(D.C. No. 3-09-cr-00020-001)
District Judge:  Honorable Curtis V. Gomez,
_____

Argued December 8, 2011
Before:  FISHER, GREENAWAY, JR. and ROTH, *Circuit Judges*.

(Filed: January 17, 2012)

Richard F. Della Fera (Argued)
Alvin E. Entin
Entin & Della Fera
110 Southeast 6th Street, Suite 1970
Fort Lauderdale, FL  33301
        *Counsel for Appellant*

Kelly Lake
Nolan D. Paige (Argued)
Office of United States Attorney
5500 Veterans Building, Suite 260
United States Courthouse
Charlotte Amalie, St. Thomas, USVI  00802-6924
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Gelean Mark appeals from his convictions in the U.S. District Court for the District of the Virgin Islands for engaging in a pattern of racketeering activity in violation of 18 U.S.C. § 1961 *et seq.* We will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

On October 1, 2009, a grand jury handed down a superseding indictment against Gelean Mark and Jerome Blyden, charging them with participating in or operating a racketeering enterprise ("Mark/Blyden enterprise") involving narcotics sales, illegal gambling, and violent acts, in violation of 18 U.S.C. § 1962(c) ("RICO") (Count One); attempted murder in aid of racketeering, in violation of 18 U.S.C. § 1959 (Count Two); assault with a dangerous weapon in aid of racketeering, also in violation of 18 U.S.C. § 1959 (Count Three); and using a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924 (Count Five).[1]

---

[1] Counts Four, Six and Seven charged Blyden only with assault, money laundering and fraud offenses.

The District Court granted Mark's first counsel several continuances of trial in recognition of the case's complexity and cumbersome discovery. On February 5, 2010, Mark's first counsel was excused, and the court appointed new counsel to represent him. One week after being appointed, Mark's second counsel filed an emergency motion to continue, requesting at least a ninety-day extension of trial from the scheduled date of March 22, 2010. The court granted a continuance for an additional forty-two days of preparation, but summarily denied the full ninety-day request.

Trial was held from May 3, 2010 to May 8, 2010. The government presented taped phone conversations about drug trafficking and dogfighting between Mark and another member of the alleged narcotics trafficking conspiracy, Vernon Fagan, and conversations between other dealers discussing Mark's narcotics distribution network in the Virgin Islands. Three government witnesses, Elton Turnbull, James Springette, and Glenson Isaac, testified that they were engaged in drug trafficking activity with Mark, and described an extensive drug trafficking network headed by Springette, with which Mark's drug trafficking enterprise was affiliated. They also testified that Mark would secure drugs from the Springette organization at the airport in St. Thomas and facilitate their transport to the continental United States. Turnbull further testified that Mark and Blyden had hosted dogfights in the Virgin Islands, and that he and Mark had pooled money to gamble on the fights on several occasions. Isaac testified that he had attended a dogfight hosted by Mark in 2004, at which Mark won $80,000, and that drug proceeds were used "to bet that large quantity of money at dogfights."

3

On May 8, 2010, the jury returned a verdict of guilty against Mark on Counts One and Three (the RICO offenses), but acquitted him on Counts Two and Five. Mark filed post-trial motions for judgment of acquittal and a new trial. The District Court denied the motions, and sentenced Mark to 121 months' imprisonment. Mark filed a timely appeal.

II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 and 48 U.S.C. § 1612. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 48 U.S.C. § 1613.

Mark presents four issues on appeal: the denial of his motion for a continuance; the use of the Virgin Islands dogfighting statute as a predicate RICO offense; the sufficiency of the evidence connecting his dogfighting and drug trafficking as a pattern of racketeering activity; and the admission of testimony on the Springette drug organization as irrelevant and unfairly prejudicial.

We address Mark's contentions in turn. We review the denial of his motion for a continuance for abuse of discretion. *United States v. Rivera Constr. Co.*, 863 F.2d 293, 295 n.3 (3d Cir. 2000). Mark's challenge to the use of the Virgin Islands dogfighting statute as a predicate RICO offense presents a matter of statutory interpretation over which we exercise plenary review. *United States v. Parise*, 159 F.3d 790, 794 (3d Cir. 1998). We exercise plenary review over the denial of a Rule 29 challenge to the sufficiency of the evidence, and view the evidence "in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005).

4

We review a district court's admission of evidence for abuse of discretion, but exercise plenary review over its interpretation of the Federal Rules of Evidence. *United States v. Serafini*, 233 F.3d 758, 768 n.14 (3d Cir. 2000).

### III.

Mark first asks for a new trial on the grounds that the District Court abused its discretion in denying his motion for a ninety-day continuance, and granting him forty-two days instead. The District Court's summary denial of the full request, after unreservedly granting prior extensions, leads us to surmise that nothing but the calendar of the court constrained its decision. Although we give a judge "wide latitude" in exercising discretion over the grant of a continuance, judges "must balance the conflicting demands of court administration with the rights of the accused and [third parties] who would be affected by the consequences of a delay." *Gov't of Virgin Islands v. Charleswell*, 115 F.3d 171, 174 (3d Cir. 1997); *see United States v. Kikumura*, 947 F.2d 72, 78 (3d Cir. 1991). We do not tolerate a "rigid insistence on expedition" that, by constraining counsel's ability to prepare, may deprive a defendant of due process. *Charleswell*, 115 F.3d at 174 (quoting *United States v. Rankin*, 779 F.2d 956, 960 (3d Cir. 1986)).[2]

---

[2] This is a point which we emphasize: the calendar of the court, when not dealing with a speedy trial question, *should not trump* a defendant's Sixth Amendment rights; in weighing a request for a continuance, the court's calendar should only play a minor role.

We fully acknowledge that trial preparation in this case was complicated. Counsel was saddled with thousands of pages of discovery and prior trial transcripts, as well as numerous recordings; indeed, we have no quarrel with counsel's proffered justifications for seeking a continuance. Nevertheless, we conclude that the District Court did not abuse its discretion by granting a partial continuance. In total, counsel had eighty-seven days to prepare a defense; RICO cases can be complex, but this was, objectively, ample time to obtain records, meet with the defendant, and subpoena witnesses, *see United States v. Fischbach & Moore, Inc.*, 750 F.2d 1183, 1195 (3d Cir. 1984), and there were no sudden emergencies frustrating counsel's preparation on the eve of trial. *See Charleswell*, 115 F.3d at 174. The time allotted for trial preparation is often less than counsel may desire, and although Mark contends that the need for a continuance is substantiated by his counsel's ineffectiveness at trial, the proper method of addressing ineffective assistance of counsel is a claim under *Strickland v. Washington*, 466 U.S. 668 (1984). Consequently, we do not find that the District Court abused its discretion in granting a continuance of forty-two days instead of ninety.

Mark next contends that the Virgin Islands dogfighting statute cannot be used as a predicate RICO offense because it is not an act involving gambling. *See* 18 U.S.C. § 1961(1)(A). We have consistently interpreted RICO to allow predicate acts similar to the dogfighting offense charged in this case, because "State offenses [listed in § 1961(1)(A)] are included by generic designation." *United States v. Forsythe*, 560 F.2d 1127, 1137 (3d Cir. 1977) (citation omitted). "The test for determining whether the

6

charged acts fit into the generic category of the predicate offense is whether the indictment charges *a type of activity generally known or characterized in the proscribed category . . . ." Id.* (emphasis added). Gambling is defined as "the act or practice of betting," or "the act of risking something on an uncertain event." *Webster's Third New Int'l Dictionary* (1981). The Virgin Islands dogfighting statute, under which a defendant is punishable for acting "for any bet, stake, or reward," 19 V.I.C. § 2613a(a), clearly falls within the category of gambling offenses. Mark's argument that dogfighting cannot be a predicate offense because it is part of a health code segment of the Virgin Islands Code is likewise meritless. RICO requires only that the offense be chargeable under state law and punishable by more than one year of imprisonment. 18 U.S.C. § 1961(A)(1). The dogfighting statute qualifies because it is a chargeable offense punishable by up to two years of imprisonment. *See* 19 V.I.C. § 2613a(a)(4). Accordingly, the government did not need to charge a predicate act under the Virgin Islands' gambling statute.

Mark is also incorrect that RICO requires that gambling be a necessary element of the predicate offense. In *Forsythe*, we approved the use of a predicate offense which involved bribery only in the disjunctive, rather than as a required element, because the defendant was charged under the bribery prong. 560 F.2d at 1137-38. Likewise, Mark was charged in the indictment based on his dogfighting wagers, and the jury was instructed solely on the gambling prong of the offense, thereby requiring the jury to find that his conduct in fact "involved" gambling. Thus, Mark's conduct falls squarely within the RICO statute.

7

Mark's third argument is that there was insufficient evidence to tie together the dogfighting and drug trafficking as a pattern of racketeering activity. *See* 18 U.S.C. §§ 1961(5), 1962(c). A pattern of racketeering activity under RICO is established by showing "continuity plus relationship" among predicate acts. *Sedima S.P.R.I. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985) (quoting S. Rep. No. 91-617, at 158 (1969)). Although sporadic and separate criminal activities cannot alone give rise to a pattern for RICO purposes, *United States v. Eufrasio*, 935 F.2d 553, 565 (3d Cir. 1991), in organized crime cases, relatedness and continuity may be established "by connecting diverse predicate acts to an enterprise 'whose business is racketeering activity.'" *United States v. Basciano*, 599 F.3d 184, 202 (3d Cir. 2010) (quoting *United States v. Indelicato*, 865 F.2d 1370, 1383 (3d Cir. 1989)). Because "a criminal enterprise is more, not less, dangerous if it is versatile," *Eufrasio*, 935 F.2d at 566 (citation omitted), RICO tolerates the possibility that the predicate acts themselves may be diverse. *United States v. Bergrin*, 650 F.3d 257, 270-71 (3d Cir. 2011).

Under our longstanding interpretation of RICO, the evidence was sufficient in this case to establish the requisite relationship between the dogfighting and the drug trafficking conspiracies. Both operations furthered the Mark/Blyden enterprise's purposes, broadly defined in the Superseding Indictment to include "[e]nriching the members and associates" and "[p]romoting and enhancing the enterprise." The same individuals involved in the drug trafficking conspiracies – Mark and Blyden – also hosted the dogfights, wagering and winning exceedingly large amounts of money, at times up to

8

$50,000, and, as with the drug trafficking, Mark was the central player in organizing the dogfights. Further, based on Isaac's testimony that drug proceeds were used to "bet that large quantity of money" on dogfights, a reasonable jury could conclude that money was funneled between the two endeavors. This evidence was more than sufficient to prove the requisite relationship between the dogfighting and drug trafficking.

In a final foray, Mark offers two arguments that the District Court abused its discretion in admitting evidence of the Springette drug organization: first, that it was not admissible for any relevant purpose; second, that even if it was relevant, it was unfairly prejudicial under Federal Rule of Evidence 403. Neither argument prevails.

First, evidence of the Springette organization was relevant to Mark's drug trafficking and RICO charges as information establishing the organized existence and purposes of the Mark/Blyden enterprise and the predicate acts. Evidence is considered relevant in a RICO case if it tends to show the "existence and nature" of a criminal organization or enterprise, as well as its "history, structure and internal discipline . . . , and the regular means by which it conducted unlawful business." *Eufrasio*, 935 F.2d at 573. In this case, testimony about the Springette organization, including the drug production, transportation, and distribution system, was relevant to show the "existence and nature" of the Mark/Blyden enterprise, *see id.*, and specifically, to show that the drug offenses were systematic and related, thereby forming a "pattern" for RICO purposes. This evidence was also probative of the defendants' roles and responsibilities within a larger drug trafficking network, *see id.*, an integral part of the prosecution's effort to

9

demonstrate Mark's "knowing participation in and association with the RICO enterprise." *United States v. DiSalvo*, 34 F.3d 1204, 1221 (3d Cir. 1994).

Second, the Springette evidence was not unfairly prejudicial under Federal Rule of Evidence 403.[3] Not every hint of prejudice requires exclusion, *see United States v. Echeverri*, 854 F.2d 638, 644 (3d Cir. 1988), particularly in a RICO case such as this, where the criminal acts of one defendant are related to the criminal acts of others. *See, e.g.*, *DiSalvo*, 34 F.3d at 1220-21. If the evidence proves "essential elements of the RICO charges," Rule 403 does not require exclusion so long as the evidence could not have been offered in any less prejudicial way and the jury has received appropriate instructions. *Id.* In this case, evidence of the Springette organization was highly probative of the existence and nature of the RICO enterprise. The judge instructed the jury to ignore Springette's drug organization as substantive evidence of the Mark/Blyden enterprise, reminding the jury that "the defendants [were] not on trial for any act or any conduct not specifically charged in the indictment," and to "consider only the offenses charged against the defendants in the indictment." And because Springette predominantly described the roles of coconspirators other than Mark, the jury was not likely to confuse these other crimes with the charged conduct. In sum, the District Court did not abuse its discretion in admitting evidence of the Springette organization.

---

[3] For the same reason, Mark's reference to Rule 404(b) as a basis for exclusion is misplaced.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.